ARMSTRONG, Judge.
Bartol J. Taliancich and Bozo J. Talian-cich, as co-executors of the Estate of Leopold B. Taliancich, appeal the dismissal of their petition of intervention in a suit between a leaseholder of oyster beds and the Louisiana Department of Wildlife and Fisheries.
On August 2, 1976 Leopold B. Taliancich submitted an application to the Louisiana Wildlife and Fisheries Commission, hereinafter referred to as “Department”[1] to lease 100 acres of water bottoms suitable for oyster fishing in Plaquemines Parish. On February 10, 1977, Mitchell Jurisich filed a number of lease applications and lease renewals for water bottoms in the same general vicinity as the 100 acres requested by the Taliancich application. Both the Jurisich and the Taliancich families held several oyster leases in the area. *142 Jurisich had the area surveyed in October 1980. Pursuant to the directives contained in LSA-R.S. 56:425[2] Jurisich submitted the survey and plat maps to the Department on January 14, 1981. The Department approved the Jurisich application on January 19, 1981 and granted him lease #25158 consisting of 757 acres of waterbottom. The lease was duly recorded on February 9, 1981.
On April 28, 1981, in a trust agreement which named Gerald Martinez as trustee, Jurisich transferred his interest in lease #25158 to his daughter, Amy Jurisich. Martinez notified the Department of the transfer and recordation. On May 4, 1981, the Department informed Martinez that lease # 25158 contained 100 acres previously applied for by Taliancich and that the Department intended to honor the Talian-cich application by deleting those acres from the Jurisich lease.
Martinez filed suit against the Department on August 31, 1981 seeking recognition of the original Jurisich lease and praying for $140,000 in damages. Leopold Tali-ancich died on September 13, 1982 without pursuing any action regarding the lease.
The Department did not file an answer until January 19, 1984. The co-executors of Leopold Taliancich’s estate filed a petition of intervention on June 1, 1984, alleging the estate’s right to the leasehold interest in the disputed acres.
On July 3, 1984 the trial court ordered the Department to conduct an evidentiary hearing in order to clarify the Department’s policy and procedures relative to the issuance of oyster leases, and in particular the circumstances surrounding the issuance of the Jurisich lease.
On April 15, 1986 the court dismissed the intervention and ordered the Department to recognize the Jurisich lease. The trial court concluded that an application for oyster leases does not constitute a lease, therefore the rights of the applicant to the lease application cease upon his death and are not heritable by his heirs.
On appeal the co-executors maintain that under R.S. 56:425[3] Taliancich had a “prior claim” to the acreage described in his lease application and thus a property right was created in his favor. They further argue that the application to lease constituted an “agreement to lease” in the form of an executory or aleatory contract, the breach of which created a heritable right of action. We disagree.
*143 While we acknowledge that the statute gave Taliancich a “prior claim,” we cannot agree that it established an automatic entitlement to the lease such as would negate the Department’s discretion to grant the lease.
In order to have a property interest, a person must have more than a unilateral expectation. He must instead have a legitimate claim of entitlement. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The statute clearly required more of Tali-ancich and the Department than merely filing the initial application. A survey had to be made, a plan or map of the area had to be submitted and the costs of the survey had to be paid by the applicant. A determination had to be made by Department of the suitability of the applied for acres. Neither the Department nor Taliancich took any steps to complete the application in five years.
Evidence was presented that because of the backlog of surveys needed on pending leases, it was customary for the oyster fishermen to hire their own Department-approved surveyors in order to hasten the process. Taliancich chose not to take advantage of this option. However, Jurisich did comply with the statute in submitting a completed application.
The appellant argues that it has been customary for the Department to hon- or the application of a deceased person in order that his heirs may obtain the lease, however the Department was able to produce only five similar cases over the past sixty years where this was done. We agree with the trial court that custom does not make statutory law and that no evidence was submitted to the court that this “custom” has been adopted as a rule or regulation in accordance with LSA-R.S. 49:953, et seq. The Louisiana Legislature specified that all such oyster leases con-fected under this statute are heritable and transferrable. LSA-R.S. 56:449. No such provision was enacted as to mere applications to lease.
We do not find that an incomplete prior application stands on the same footing as a later completed application. Nor do we find that the incomplete application established more than a unilateral expectation to lease. Thus the Taliancich application did not create a heritable property interest in the disputed acres. Super City Boxing v. La. State Athletic Com’n., 423 So.2d 643 (La.1982).
We likewise find no merit in inter-venor’s argument that the lease application represented an executory or aleatory contract which created heritable rights and obligations. LSA C.C. Art. 1984 (formally C.C. Art. 1763).
A contract is an agreement between the parties whereby obligations are created, modified or extinguished, and is formed by mutual consent established through offer and acceptance. LSA-C.C. Arts. 1906 and 1927. While Taliancich submitted a valid offer to lease, we do not find any action on the part of the Department to indicate acceptance or consent of his application prior to the issuance of the Jurisich lease. As a matter of fact, the record is devoid of any action taken by either Taliancich or the Department relative to the Taliancich application in the five years between its submission and the issuance of the Jurisich lease.
Nor do we find that the notice to Martinez of the Department’s intent to hon- or the Taliancich application constituted acceptance and consent as would establish a valid contract or obligation. Although such notice was rendered while Taliancich was still alive, it was given to a third party, Martinez, not to Taliancich, and then only after the Jurisich lease had been completed and was in effect.
We find the Taliancich application represents part of the antecedent dealings between the applicant and the Department and does not constitute a contract. It remains instead only a “proposal” to lease until those actions on the part of the applicant and the Department, as specified in the statute, are completed and final acceptance is achieved. Monte-Janssen v. Continental Cas. Co., 203 F.2d 191 (5th Cir.1953). Moreover, even after a lease appli *144 cation is favorably acted upon, the decision to lease any or all of the applied for acres remains discretionary with the Department. LSA-R.S. 56:425; Vujnovich v. Louisiana Wildlife and Fisheries Commission, 376 So.2d 330 (La.App. 4th Cir.1979). Once this discretion has been exercised in the issuance of a valid lease, the deletion of previously applied for acreage, under the circumstances of this case, would be an arbitrary exercise and abuse of that discretion.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.

. The Wildlife and Fisheries Commission was placed under the authority of the Department of Wildlife and Fisheries on July 1, 1977. See R.S. 36:101.

. Directives for oyster lease applications are now contained in LSA-R.S. 56:427-451.

. LSA-R.S. 56:425 states in pertinent part as follows:
Any person otherwise authorized in R.S. 56:421 through 56:449 so to do, desiring to lease a part of the bottom or bed of any of the waters of this state as provided herein, shall present to the commissioner a written application, with a cash deposit of such amount as is determined by the commissioner setting forth the name and address of the applicant and a reasonably definite description of the location and amount of land covered by water desired by the applicant, and shall ask that the application be registered, that the water bottom be surveyed, that a plan or map of survey thereof be made, and that the water bottom described be leased to the applicant under the provisions of R.S. 56:421 through 56:449. Thereupon the commissioner shall register the application and shall order an examination to determine whether the bottoms applied for are leasable or not, and the basis whereon the rental thereof shall be fixed. Should the area be found to be leasa-ble, a survey and plan shall be made at the expense of applicant, at a fee to be fixed by the commissioner. The expense shall be paid by applicant to the surveyor in compensation for his services of making the survey, at the time the survey is made. When applications are made by two or more persons for the same water bottoms, the applicant who files the first application has prior claim. The commissioner shall require the bottoms of water areas leased to be as compact as possible, taking into consideration the shape of the body of water and the condition of the bottom, as to hardness or softness thereof, which would render them desirable or undesirable for the purpose of oyster cultivation.
If the application is favorably acted upon, as soon as the survey has been made, the plan or map thereof filed with the commissioner and the costs paid by the applicant, the commissioner may, at his option, execute a lease for the water bottoms to the applicant at the rate of rental fixed by the commissioner not less than one dollar nor more than five dollars per acre or fraction of an acre per year.
[[Image here]]