FOIL, Judge.
Plaintiffs, Louisa Seafood Company, Inc. (Louisa) and one of its officers and stockholders, Joseph Colletti, Sr., appeal from the judgment of the trial court dismissing their mandamus action and mandatory injunction action against the Louisiana Wildlife and Fisheries Commission and/or the Seafood Division of the Department of Wildlife and Fisheries (Department).
FACTS
In November, 1986, two of Louisa’s officers, Joseph Colletti, Jr., and Joseph Collet-ti, Sr., who were new to the oyster fishing business, sought information concerning the same from the Department. They met with Al Anderson, chief surveyor for the Department. Mr. Anderson told them of some existing applications in their area which had not been acted on by their owners. According to Mr. Colletti, Jr., Mr. Anderson told them there would be some flexibility in moving an application because there were no other existing applications pending in the area. On February 26, 1987, Louisa purchased an oyster lease application No. GG-592 from Ocean Seafood Company, Inc., encompassing 500 acres of water bottom in Iberia Parish. The Department was notified and changed the name of the applicant to reflect the transfer. Application No. GG-592 was subsequently scheduled for surveying by the Department.
On March 18, 1987, Mr. Colletti, Jr. met with Louis Schilling, a field surveyor with the Department, near the site of the area described in the application. Colletti stated he was not ready for a survey. He informed Schilling that the area described in the application was not suitable for fishing and he desired to move the application to another area. Schilling replied that he could not allow it, but would check with his supervisor. He proceeded to contact Mr. Anderson by radio from the boat. Anderson stated he saw no problem with moving the application at that time. Schilling then told Colletti he would have to hire a private surveyor since he did not know exactly where he wanted to survey the application.
Al Anderson testified he contacted Mr. Colletti, Sr. in early June, prior to a survey, and told him he had been informed he had no authority to give permission to move the application. He explained that Mr. Colletti would have to stay within the written description contained in the application.
The Collettis deny being aware of the problem prior to conducting the survey. Mr. Colletti, Sr. testified he spoke with Anderson in June, but it was in an August conversation that Anderson stated there was a problem with the location of the survey. He testified the conversation took place after the survey was completed and they were waiting on the finalization of the lease. Mr. Colletti, Jr., testified that the June conversation between his father and Mr. Anderson dealt with the fact that they could not move 4 or 5 miles east of the original description. Accordingly, they backed up to a point 2 or 3 miles east of the description, he thought, without objection.
In any event, Louisa hired a surveyor, Ronald Woosley, to survey a new site for GG-592. In July of 1987, a survey was submitted to the Department covering an *573 area located outside the description contained in GG-592. Revisions were requested by the Department, which were complied with. A final survey was then submitted and later accepted by the Department. Mr. Woosley’s survey charge was $1,215.00. On August 11, 1987, Louisa paid $340.00 to the Department for lease charges based on the surveyed acreage.
By letter dated August 25, 1987, Louisa was informed by Mr. Anderson that the lease could not be issued because the survey did not remain within the written description on the application. Plaintiffs subsequently filed this suit seeking mandamus or injunctive relief compelling the Department to execute the oyster lease as a ministerial duty or, alternatively, as an unreasonable and arbitrary abuse of discretion. The trial court entered judgment in favor of defendants and dismissed plaintiffs’ claims. It is from this judgment that plaintiffs bring the instant appeal, urging as a sole assignment of error the trial court’s denial of the relief sought.
MANDAMUS
Mandamus is an extraordinary remedy set forth in the Louisiana Code of Civil Procedure. Article 3862 provides, in pertinent part:
A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice....
Article 3863 states in part:
A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law....
As stated in the Official Revision Comments to Article 3863, mandamus will issue only when there is a clear and specific right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. Our jurisprudence is clear that such writ may not issue to compel performance of an act which contains any element of discretion, however slight. Rather, the act must be purely ministerial. Big Train Construction Company, Inc. v. Parish of St. Tammany, 446 So.2d 889, 890 (La.App. 1st Cir.1984).
The law concerning oyster leases is found in La.R.S. 56:423, et seq. Of pertinence to this case is Section 425, which provides in part as follows:
A. The secretary may lease to any resident, any firm composed of residents, or any corporation domiciled in or organized under the laws of this state any state-owned water bottoms and natural reefs in the water bottoms of this state under the limitations herein stipulated.... [Emphasis added]
# * * * * ' #
D. The department may fully settle all disputes as to boundaries between lessees of bedding grounds, subject to appeal to any court of competent jurisdiction.
Section 427 further provides:
A. Any person who qualifies under this Subpart and who desires to lease a part of the bottom or bed of any of the waters of this state as provided in this Subpart, shall present to the secretary a written application, with a cash deposit of such amount as is determined by the department. This application shall contain the name and address of the applicant and a reasonably definite description of the location and amount of land covered by water desired by the applicant. The applicant shall ask that the application be registered, that the water bottom be surveyed, that a plan or map of survey thereof be made, and that the water bottom described be leased to the applicant under the provisions of this Subpart. The department shall then register the application, shall order an examination to determine whether the bottoms applied for are leaseable [sic], and shall determine the basis upon which the rental of the lease shall be fixed. If the area is found to be leasable, a survey and plan shall be made at the expense of the applicant, at a fee to be fixed by the commission. The expense shall be paid by the applicant to the department in compensation for the services of making the survey, at the time the survey is made. If the application is favorably acted upon, *574 the secretary may, at his option, execute a lease for the water bottoms to the applicant as soon as the survey has been made, the plan or map thereof has been filed with the department, and the costs have been paid by the applicant. [Emphasis added]
B. When applications are made by two or more persons for the same water bottoms, the applicant who files the first application has prior claim. The department shall not accept any survey plan for any lease that exceeds by ten percent the acreage described in the initial application for the particular lease from the date of adoption of this Subsection, except that the department may accept any lease application, even where the survey plan exceeds by ten percent the acreage described in the initial application, if the lease would not overlap or impact surrounding leases or pending lease applications.
C. The department shall require that the bottoms of water areas to be leased be as compact as possible, taking into consideration such factors as the shape of the body of water, and the condition of the bottom as to hardness or softness which would render it desirable or undesirable for the purpose of oyster cultivation.
D. The provisions of this Section shall apply only to the initial application for an oyster lease, and not to the renewal of a lease.
The trial court was clearly correct in holding that mandamus will not lie in this instance. Even after a lease application is favorably acted upon, the decision to lease any or all of the applied for acres remains discretionary with the Department. Martinez v. Louisiana Department of Wild Life and Fisheries, 514 So.2d 140 (La.App. 4th Cir.1987), writ denied, 519 So.2d 126 (La.1988); Vujnovich v. Louisiana Wildlife and Fisheries Commission, 376 So.2d 330 (La.App. 4th Cir. 1979).
INJUNCTIVE RELIEF
We further find that the trial court properly denied plaintiffs’ request for injunctive relief.
Relief by mandatory injunction is available, if a defendant has been arbitrary or discriminatory in refusing the action sought to be enforced. See Fremin-Smith Services, Inc. v. St. Charles Parish Waterworks District No. 1, 300 So.2d 514 (La. App. 4th Cir.1974). Injunctive relief is not available as a remedy unless the petitioner shows that he will suffer irreparable injury if such relief is not granted. La.Code of Civ.P. art. 3601; Anzelmo v. Louisiana Commission on Ethics for Public Employees, 435 So.2d 1082 (La.App. 1st Cir.), writ denied, 441 So.2d 1220 (La.1983).
In the instant case, the Department was not arbitrary or discriminatory in refusing to execute plaintiffs’ oyster lease. La. R.S. 56:427(A) requires that a lease application contain a “reasonably definite description of the location and amount of land covered by water desired by the applicant.” As noted by the trial court in oral reasons for judgment in this case, the purpose of this requirement is to promote stability in the law dealing with oyster leases. There would be “nothing but chaos” if an applicant could include one area in his application and obtain a lease on an area completely contrary to that original description. Here, plaintiffs surveyed an area some 3 miles to the east of the area contained in the original description. The Department had a reasonable and legitimate basis for refusing to execute the lease.
Moreover, plaintiffs cannot demonstrate that they will suffer irreparable injury if the lease is not executed as requested. There is no dispute that plaintiffs have leasehold or application rights in application No. GG-592 as to the location contained in the original description therein.
For the above reasons, the judgment of the trial court is affirmed at plaintiffs-appellants’ cost.
AFFIRMED.