STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-499


HAROLD SCHOEFFLER, ET AL.

VERSUS

DRAKE HUNTING CLUB, ET AL.


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 01-63941
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and
J. David Painter, Judges.

AFFIRMED.

Steven Gerald Durio
DURIO, McGOFFIN, STAGG & ACKERMANN
P. O. Box 51308
Lafayette, LA 70505-1308
Telephone: (337) 233-0300
COUNSEL FOR:
    Plaintiffs/Appellants - Kenneth Vicknair, Harold Schoeffler, Roger
    L. Boughton, Jody Meche, and Mike Bienvenu

Gary L. Keyser
1817 Chopin Drive
Baton Rouge, LA 70806
Telephone: (225) 927-8399
COUNSEL FOR:
    Defendant/Appellee - State of Louisiana

James W. Schwing, Sr.
411 Iberia Street
New Iberia, LA 70560
Telephone: (337) 365-2445
COUNSEL FOR:
    Defendant/Appellee - Buckskin Hunting Club

Patrick G. Tracy, Jr.
P. O. Box 54001
Lafayette, LA 70505
Telephone: (337) 266-2256
COUNSEL FOR:
    Defendant/Appellee - Williams, Inc.

Newman Trowbridge, Jr.
P. O. Box 3644
Lafayette, LA 70502-3644
Telephone: (337) 266-2340
COUNSEL FOR:
    Defendants/Appellees - Atchafalaya Crawfish Conservation Association, Black Bayou Crawfishing Club, and JCB Development, Inc.

James Harvey Domengeaux
Domengeaux, Wright, Roy & Edwards
556 Jefferson Street
Jefferson Towers - Suite 500
Lafayette, LA 70502
Telephone: (337) 233-3033
COUNSEL FOR:
    Defendant/Appellee - Drake Hunting Club

Juliette Busby Wade
P. O. Box 51308
Lafayette, LA 70505-1305
Telephone: (337) 233-0300
COUNSEL FOR:
    Plaintiffs/Appellants - Elvis Jeanminette, Jody Meche, Roger L. Boughton, Buddy J. Bayard, Harold Schoeffler, Greg Guirard, Kenneth Vicknair, and Coerte Voorhies

THIBODEAUX, Chief Judge.

This case involves a declaratory judgment and boundary action by five members of the general public who fish, hunt, and navigate in the Atchafalaya Basin against approximately a dozen private landowners and lessees who have posted signs and barriers against trespassing on their property. The plaintiffs contend that they have been prevented from using public areas such as tidal-influenced lands and state-owned navigable waterways of the Atchafalaya Basin by the private landowners. Defendants argue that the land at issue is water-inundated private land not subject to public use. Plaintiffs, claiming public use servitudes, assert conventional boundary articles to survey and fix boundaries at the high water mark along the privately-owned lands. They have added the State as a defendant and seek a mandamus action compelling the State to bring a boundary action against the owners and lessees.

The trial court granted the private owners/lessees' exceptions of no cause and no right of action to survey and fix the boundaries. The trial court granted also the State's exceptions of no cause and no right of action and dismissed the State from all of Plaintiffs' demands. For the following reasons, we affirm.

I.

**ISSUES**

We must decide:

(1)  whether non-owner, non-lessee Plaintiffs have a cause and right of action to fix boundaries between the inundated lands in the Atchafalaya Basin and the navigable waters of the State of Louisiana under La.Civ.Code art. 456 and art. 784, *et seq*. and La.Code Civ.P. art 3691, *et seq*.;

(2)  whether non-owner, non-lessee Plaintiffs have a cause and right of action to bring a writ of mandamus against the State of Louisiana, compelling the State to fix boundaries between its navigable waters and the inundated lands of owners

and lessees in the Atchafalaya Basin under La.Civ.Code art. 456 and art. 784, *et seq.* and La.Code Civ.P. art. 3691, *et seq.*; and,

(3) whether non-owner, non-lessee Plaintiffs have an action for declaratory judgment against the State of Louisiana declaring that Plaintiffs are entitled to fisheries access and other uses below the ordinary high water mark in the present and former beds of Lake Chetimaches, and that all waters at issue in the Atchafalaya Basin are running waters or bottoms of navigable waterbodies subject to public use including crawfishing and commercial fishing and requiring Defendants to remove impediments to public use.

II.

**FACTS AND PROCEDURAL HISTORY**

Plaintiffs are five individuals who fish, crawfish, hunt, and navigate for other reasons, such as touring and photographing, the waters of the Atchafalaya Basin for commercial and recreational purposes. In this action they are seeking a declaratory judgment and boundary action against approximately a dozen private landowners and lessees in the Atchafalaya Basin. The private owners and lessees include private individuals, heirs, estates, corporations, hunting clubs, crawfishing associations, land and lumber companies. Plaintiffs allege that the owners and lessees have posted "no trespass" signs, constructed gates, installed cables, or patrolled the subject areas and waters impeding Plaintiffs' servitude and right of public access to waters, tidal-influenced beds, and owners' private banks subject to public use. Plaintiffs assert that these areas have been posted and patrolled, often under color of state authority or law, and that civil and criminal trespass prosecutions "have occurred." However, Plaintiffs do not allege that any one of them has been the subject of prosecution for trespass.

2

The Plaintiffs' Third Amended and Restated Petition added the State of Louisiana as a defendant and requested a mandamus action to compel the State to "represent the public interest" and bring an action to fix the boundaries against the landowners and lessors. The boundary action is brought pursuant to La.Civ.Code art. 784, *et seq*., and La.Code Civ.P. art. 3691, *et seq.* However, the boundary sought to be fixed is a high water boundary, delineating the land below the high water mark as subject to public use pursuant to La.Civ.Code art. 456, which states that the banks of state-owned navigable rivers and streams are private things subject to public use. However, the Third Amended and Restated Petition omitted the boundary action against the private Defendants, and the trial court allowed Plaintiffs to amend, decreeing that all exceptions previously filed would apply.

The Fourth Amended and Restated Petition, now at issue, seeks a declaratory judgment declaring that the waters and areas at issue are all running waters or bottoms of navigable waterbodies subject to the rise and fall and influence of the tides and are, therefore, public things subject to public use. It further seeks a declaration that Plaintiffs are entitled to fishing access and other uses below the ordinary high water in the present and former beds of Lake Chetimaches. The Plaintiffs describe Lake Chetimaches generally as the Atchafalaya Basin, including six named lakes and associated tributary and distributary waters. Plaintiffs further request an order requiring private Defendants to remove the "no trespass" signs and impediments to public access.

Defendant owners and lessees assert that the Basin contains over two million acres, some 595,000 of which are within a floodway more than 130 miles long, that it contains public land, state-owned fee land, wildlife-managed areas, a wildlife refuge, and vast amounts of overflowed land under private ownership emanating from Federal Swamp Land Grants of 1849 and 1850. They maintain that

more than 85,000 acres of privately-owned land are affected by Plaintiffs' claims and cite an impressive number of cases illustrating the complexities involved in Plaintiffs' allegations. Defendants state that public use servitudes on the banks of navigable rivers are only for a navigational purpose and do not include the right to hunt or fish without permission of the riparian owner; and the mere fact that privately-owned land or waterways are flooded or navigable does not render them public. They cite numerous cases for these propositions including *State v. Barras*, 615 So.2d 285 (La.1993), *Walker Lands, Inc. v. East Carroll Parish Police Jury and the State of Louisiana,* 38,376 (La.App. 2 Cir. 4/14/04), 871 So.2d 1258, *writ denied,* 04-1421 (La. 6/3/05), 903 So.2d 442, and *Buckskin Hunting Club v. Bayard,* 03-1428 (La.App. 3 Cir. 3/03/04), 868 So.2d 266, where the plaintiff was one of the defendants herein. Defendants further point out the difficulties and applicability of drawing high water boundaries on inundated land that has no "banks," and specifically argue that Plaintiffs are not the proper parties to bring a boundary action.

The State asserts that the Atchafalaya Basin has never been legally defined as one large body of water, and that Lake Chetimaches, as it was known to Indian inhabitants 1,000 years ago, became identifiable rivers and uplands by 1812, such that a public claim to the beds or bottoms of that "lake" are overreaching. The State further asserts that Plaintiffs are actually seeking access for all purposes to inundated private lands that they have no possessory or proprietary right to access, that they have not stated a justiciable controversy, and that the State has no duty to sue its own citizens on Plaintiffs' behalf.

The issues presently before the court are the exceptions to the boundary action against the landowners and lessees, the mandamus action to compel the State to bring the boundary action, and the declaratory judgment action against the State. We note that Plaintiffs' appeal focuses on the boundary action against the landowners

4

and lessees and the mandamus action against the State and does not specifically brief the declaratory action against the State. However, the declaratory action remains, and the State has been dismissed from "all demands." The State argues that it was properly dismissed from the mandamus action and the declaratory action. We will address the boundary action against the landowners and lessees, the mandamus action against the State, and the declaratory action as it pertains to the State.

## III.

## LAW AND DISCUSSION

### Standard of Review

In reviewing a trial court's ruling sustaining an exception of no cause of action, we conduct a *de novo* review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. La.Code Civ.P. art. 927; *Indus. Companies, Inc. v. Durbin*, 02-0665 (La. 1/28/03), 837 So.2d 1207. The determination of whether a plaintiff has a right of action is a question of law; accordingly, an appellate court also conducts a *de novo* review of the granting of an exception of no right of action. La.Code Civ.P. art. 927; *Mississippi Land Co. v. S & A Properties II, Inc.*, 01-1623 (La.App. 3 Cir. 5/8/02), 817 So.2d 1200.

As a preliminary matter, we note that, although they are often confused and/or improperly combined in the same exception, the peremptory exceptions of no *cause* of action and no *right* of action are separate and distinct. La.Code Civ.P. art. 927(4) and (5). The Louisiana Supreme Court has recognized that one of the primary differences between the two exceptions lies in the fact that a frequent focus in an exception of no *cause* of action is on whether the law provides *a remedy* against the *particular defendant*, while the focus in an exception of no *right* of action is on

5

whether the *particular plaintiff* has a *right* to bring the suit. *Benoit v. Allstate Ins.*, 2000-0424, p. 10 (La. 11/28/00), 773 So.2d 702.

Accordingly, the first question that we must address is whether the Plaintiffs have stated in their amended and restated petition a cause of action against the Defendant landowners and lessees to fix boundaries of public servitude along Defendants' properties in the Atchafalaya Basin. The function of the Defendants' peremptory exceptions of no *cause* of action is to question whether the law provides a remedy against the particular defendants in this case to *anyone* under the factual allegations of the petition. *Cleco Corp. v. Johnson*, 01-0175 (La. 9/18/01), 795 So.2d 302.

The exception is triable on the face of the petition and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Id.* "Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." *Fink v. Bryant*, 01-0987, p. 3 (La. 11/28/01), 801 So.2d 346, 349. "Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording to the plaintiff the opportunity of presenting evidence at trial." *Jackson v. State ex rel. Dep't of Corr.*, 00-2882, p. 4 (La. 5/15/01), 785 So.2d 803, 806.

**Cause of Action to Fix Boundaries in the Atchafalaya Basin**

In the present case, Plaintiffs are several individuals who contend that they are public users of the waterways and "banks" of the Atchafalaya Basin with rights to fix numerous boundaries of public servitude in the Atchafalaya Basin under La.Civ.Code arts. 456 and 784, *et seq.*, and La.Code Civ.P. art. 3691. In Plaintiffs'

fourth amended and restated petition, Plaintiffs allege that they are users of various water rights who navigate, fish, crawfish, hunt, guide, tour, photograph, canoe, and trap for recreational and commercial purposes in the Atchafalaya Basin. They assert that they and their ancestors have done so historically and are now being unlawfully prohibited from doing so by Defendant landowners and lessees who erect barrier gates or cables, post and patrol the public waters and who threaten or institute prosecution for trespass. Plaintiffs state that the actions complained of have occurred "in the present and/or former bed of Lake Chetimaches."

The State of Louisiana asserts that Plaintiffs' claims are overreaching in asserting access to "waters of the State . . . generally described as the Atchafalaya Basin." The basin, the State contends, formed over a 1,000 years ago as an embayment of the Gulf and known to the indians as Lake Chetimaches, has undergone geomorphological changes and ceased being an embayment or water-covered area hundreds of years ago. The State explains that by the time Louisiana achieved sovereignty in 1812, the Basin was occupied by identifiable uplands, swamps, rivers, lakes, bayous and streams and was no longer a large lake-like body of water. It asserts that Deputy U.S. Government Surveyors were assigned to survey the lands and waters therein to determine the quantity of land available for sale and conveyance. The results of the surveys are shown on the official U.S. Government Township Surveys and form the basis for land title descriptions for both public and private lands. Thousands of acres were sold and are privately-owned except for the naturally navigable bodies of water owned by the State by virtue of its inherent sovereignty.

The State further explains that in addition to the uplands that were sold, large areas of swamp and overflowed lands were transferred to the State under the Swamp Land Grants Acts of 1849 and 1850. The State then transferred most of these

7

overflowed lands to levee districts and boards which sold them to private interests to generate funds for levees and drainage to protect the interior lands more suited for development. The State asserts that it is these private lands, inundated during the several annual high water stages of the Atchafalaya River, confined by the east and west guide levees, over which Plaintiffs seek a right of navigation for all of the purposes claimed in the several restated petitions.

Plaintiffs list approximately a dozen landowners and lessees and describe the acreage of each, by parish, township, section and range, and list various additional lakes, bayous and tributaries which provide access to these properties. As to the boundary cause of action, Plaintiffs petition states:

### Action to Fix Boundaries

*33.*

*Plaintiffs claim a right to a boundary pursuant to Louisiana Civil Code Article 784, et seq., and a right to compel the fixing of boundaries pursuant to Louisiana Code of Civil Procedure Article 3691, et seq.*

*34.*

*The boundary which is claimed and to be fixed herein is the boundary between (1) the land subject to plaintiffs' public use, pursuant to Louisiana Civil Code Article 456, lying between the ordinary low and ordinary high stage of the water; and (2) the land owned by the defendants but not subject to public use, lying above the ordinary high stage but adjacent to the water.*

*35.*

*Plaintiffs seek a declaration that the ordinary high water stage used as a boundary of any rights adjudicated herein ought to be determined by the U.S. [Army] Corps of Engineers method based on the average of highest daily stages each year, for eighteen (18) years.*

*36.*

> *Plaintiffs allege that the boundary claimed and sought to be fixed is readily determinable with appropriate expert analysis from existing data collected by the Corps of Engineers of the U.S. Army, including but not limited to cross-sectional elevation surveys and river gauge data readings of the water bodies in the Atchafalaya Basin.*

As previously indicated, in determining the cause of action question herein, we must decide whether the petition states a remedy at law for the fixing of boundaries between the named landowners and lessees and the State of Louisiana as owner of the navigable waters in the Atchafalaya Basin. Plaintiffs' Fourth Amended and Restated Petition as shown above cites La.Civ.Code arts. 784, *et seq.*, and La.Code Civ.P. art. 3691, *et seq.*, as authority for fixing the boundary, and cites La.Civ.Code art. 456 to describe the kind of boundary they wish to have fixed. Accordingly, those articles provide as follows:

**La.Civ.Code art. 784.  Boundary; marker**

A boundary is the line of separation between contiguous lands.  A boundary marker is a natural or artificial object that marks on the ground the line of separation of contiguous lands.

**La.Civ.Code art. 785.  Fixing of the Boundary**

The fixing of the boundary may involve determination of the line of separation between contiguous lands, *if it is uncertain or disputed*; it may also involve the placement of markers on the ground, *if markers were never placed*, were *wrongly* placed, *or* are *no longer to be seen*.

The boundary is fixed in accordance with the following rules.

(Emphasis added).

**La.Civ.Code art. 786.  Persons who may compel fixing of boundary**

The boundary may be fixed upon demand of an owner or of one who possesses as owner.  It may also be fixed upon the demand of a usufructuary but it is not

binding upon the naked owner unless he has been made a party to the proceeding.

**La.Civ.Code art. 787.  Lessee may compel lessor**

When necessary to protect his interest, a lessee may compel the lessor to fix the boundary of the land subject to the lease.

**La.Code Civ.P. art. 3691.  Boundary action**

An action to fix the boundary is an ordinary proceeding.

**La.Code Civ.P. art. 3692.  Appointment of surveyor by court; duties of surveyor**

The court may appoint a surveyor to inspect the lands and to make plans in accordance with the prevailing standards and practices of his profession indicating the respective contentions of the parties.

**La.Code Civ.P. art. 3693.  Evidence; judgment**

After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties.

**La.Civ.Code art 456.  Banks of navigable rivers or streams**

The banks of navigable rivers or streams are private things that are subject to public use.

The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water.  Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.

As a threshold matter, the boundary under Article 784 is a permanent physical line of separation between contiguous lands and is fixed on the ground by professional surveyors using field notes, calls, courses, distances, and natural and artificial monuments.  Land surveyors and their work product are regulated and bound

10

by stringent minimum standards of the survey profession set forth in particularized statutes and entire bodies of law. Our jurisprudence is filled with the problems inherent in surveying a single boundary line that involves a body of water, because water is fluid. Rivers change course, overflow, move their beds, deposit silt, form deltas. Lakes swell for miles, and their beds dry up completely; some are ephemeral, not real lakes, and exist only when another body of water overflows. One need but look at the annotated cases under the traditional boundary and survey articles to see the plethora of problems that arise in every survey and boundary action that involves a body of water.

Nonetheless, Plaintiffs seek to combine traditional boundary articles with La.Civ.Code art. 456, and force the State and the private owners to fix numerous boundaries based on numerous bodies of water. Plaintiffs concede the inundated nature of the swamp land at issue, and therefore in reality seek to establish a boundary, not between contiguous lands, but between the water flowing onto private land and the navigable waters of the State of Louisiana. On the face of the petition, there clearly does not appear to be a cause of action for the kind of "boundary" that Plaintiffs seek to fix. Moreover, Defendants, both the owners and lessees of the land and the "banks" and the State of Louisiana as owner of the navigable rivers and streams, assert that there is no dispute between them pursuant to La.Civ.Code art. 785. Defendants also point out that the land at issue is inundated or flooded land and swampland that has no definable "banks," that the high and low water stage is fluid, changes daily, and is not susceptible to being marked as a traditional boundary is marked under the articles cited.

Even if Plaintiffs' petition could be considered as having stated a dispute and cause of action under La.Civ.Code art. 785, which we believe inapplicable because the boundary sought is not a traditional boundary between "contiguous

11

lands," Article 785 itself mandates that the successive articles govern such boundary actions by stating that the boundary is to be fixed "in accordance with the following rules." Accordingly, La.Civ.Code arts. 786 and 787, also cited by Plaintiffs as "et seq.," dictate that only owners, those who possess as owners, lessees, and usufructuaries may bring a boundary action. These articles, though inextricably intertwined with the cause of action articles, take our analysis into the realm of the "right" of action which questions whether these Plaintiffs are the "particular persons" who have a remedy in a boundary action. Therefore, we will discuss them more fully under the right of action analysis. However, it should be noted at this point that the petition itself determines whether a cause of action is stated therein. While Plaintiffs argue on appeal that they are usufructuaries, they do not state this in their petitions; nor do the petitions allege facts that support such a contention.

Plaintiffs also cite La.Code Civ.P. arts. 3691, *et seq*. as authority for their boundary action. Article 3691 states only that, "An action to fix the boundary is an ordinary proceeding," and it cross-references La.Civ.Code art. 784 *et seq*., as discussed above. The comment to Article 3691 indicates that the article was rewritten in 1977 to delete the language declaring that "the owner of one of the contiguous lands may bring an action against the other" because the boundary action "may also be brought by persons other than owners, such as usufructuaries and adverse possessors." The comment also states that the revision does not change the law. Article 3692 provides that, "The court may appoint a surveyor . . . indicating the respective contentions of the parties." Article 3693 provides that "[a]fter considering the evidence, . . . the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties." For the same reasons stated above, we do not believe that these articles enhance Plaintiffs' claims to a cause of action for the type of boundary they seek to have

12

drawn. This is particularly true where the petition does not state facts identifying the Plaintiffs as owners, usufructuaries, or adverse possessors.

**Right of Action To Fix Boundaries**

The right of action questions whether *these particular plaintiffs* have a right to bring the suit in this case. Generally, an action can only be brought by a person having a *real and actual interest* which he asserts. La.Code Civ. P. art. 681. The exception of no right of action is designed to test whether the *plaintiff* has a *real and actual interest* in the action. La.Code Civ. P. art. 927(A)(5). "The function of the exception of no right of action is to determine whether the *plaintiff* belongs to the *class of persons* to whom the law grants the cause of action asserted in the suit." *Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n*, 94-2015, p. 5 (La. 11/30/94), 646 So.2d 885, 888 (emphasis added).

The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. *Id.* Unlike the trial of an exception of no cause of action, evidence is admissible on the trial of an exception of no right of action to "support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La.Code Civ. P. art. 931; *Indus. Co., Inc.*, 837 So.2d 1207.

On appeal, Plaintiffs assert that they have a right of action to fix the boundaries in the Atchafalaya Basin under La.Civ.Code art. 786 above because they are usufructuaries, "as they have the right to enjoy the use and fruits of State-owned waters and bottoms." Plaintiffs have entered no evidence into the record to support their claim that they are usufructuaries but cite two cases for the proposition that usufructuaries can maintain boundary actions.

13

More specifically, they argue that in *Deshotels v. Guillory*, 161 So. 217 (La.App. 1 Cir. 1935), the court upheld the right of an undivided owner and legal usufructuary to maintain a boundary action against her neighbors. In that case, the plaintiff was a widow who owned property alongside her deceased husband's brother and nephew. When they continued to encroach upon her property, she brought a boundary action against them. Her petition alleged that she was the owner of an undivided three fourths of the subject property and the legal usufructuary of the other fourth. She presented evidence of probate proceedings and a judgment dated April 8, 1912, which supported her right to the boundary action.

The second case cited by Plaintiffs is *Randazzo v. Lucas,* 106 So.2d 490 (La.App. Orleans 1958). There, the plaintiffs were a widower and his seven children from the marriage to his deceased wife. The succession establishing the heirship of the seven children was not complete. The court held that the subject boundary action was maintainable by the husband alone as the owner of an undivided one-half of the property as surviving husband and the legal usufructuary of the share of the decedent which devolves to the children of the marriage. However, these cases are not analogous to the instant matter. Rather than support the contentions of Plaintiffs herein, they operate to highlight the current Plaintiffs' lack of proof of a legal or conventional usufruct in the properties in the Atchafalaya Basin. These cases do nothing to support the contention that members of the public at large are entitled to a legally recognizable usufruct of the waters and flooded lands in the Atchafalaya Basin within the meaning of the legal term "usufruct" or the articles addressing the usufructuaries in the Civil Code.

Usufruct is a real right of limited duration on the property of another. La.Civ.Code art. 535. Usufruct may be conferred in two ways: by a juridical act either inter vivos or mortis causa, or by operation of law. The usufruct created by

14

juridical act is called *conventional*; the usufruct created by operation of law is called *legal*. La.Civ.Code art. 544. The Civil Code's official notes and comments accompanying Article 544 provide that conventional usufructs are of two kinds: either contractual, created by inter vivos juridical act, or testamentary, created by mortis causa juridical act. Clearly, the Plaintiffs herein have entered no evidence of a conventional usufruct in their favor. Under the official comments of Article 544, legal usufructs include the parents' enjoyment, during marriage, of the property of their minor children; and the surviving spouse's usufruct of the community property. Likewise, the Plaintiffs have entered no evidence of a legal usufruct over the property in the Atchafalaya Basin.

Comment (c) to La.Civ.Code art. 544 also states that, while the Code does not expressly provide for the creation of usufruct by acquisitive prescription, this additional method is recognized by doctrine and is subject to the rules governing conventional usufruct. However, there has been no assertion and clearly no evidence entered of acquisitive prescription in this case. Acquisitive prescription without just title requires proof of actual, adverse, corporeal possession which is continuous, uninterrupted, peaceable, public, unequivocal, within visible bounds, and proof of intent to possess as owner, adverse to the actual owner, for the required thirty years. *See LePrettre v. Progressive Land Corp.*, 01-1660 (La.App. 3 Cir. 6/19/02), 820 So.2d 1240.

Defendant landowners and lessees argue that Plaintiffs have no right to bring a boundary action under La.Civ.Code art. 786 and La.Code Civ.P. arts. 3691-3693 as members of the public at large with no possessory or proprietary rights in the lands and water bodies at issue. In support of this contention, they cite *State v. Danzy*, 527 So.2d 68 (La.App. 3 Cir.), *writ denied,* 528 So.2d 153 (La.1988). There, the State of Louisiana commenced suit against Danzy seeking recognition as the

owner of certain land claimed by Danzy. The State alleged that the land was the former bottom of a navigable lake and sought money damages for the removal and sale of timber from that land. A "Petition for Intervention as a Class Action Parties Plaintiffs" was filed by individuals on behalf of themselves and the citizens of Grant Parish.

The intervenors in *Danzy,* similar to the Plaintiffs in the instant matter, alleged that they were wrongfully deprived of their right to hunt, fish, camp, and engage in other recreational activities and had been unable to use and enjoy State-owned property in accordance with the applicable laws and regulations. In *Danzy*, we stated as follows:

> Such a right is given in La.C.C. art. 452, which, in pertinent part, states, "Public things and common things are subject to public use in accordance with applicable laws and regulations . . ." Public things are defined in La.C.C. art. 450 which states, in pertinent part: "Public things that belong to the state are such as . . . bottoms of natural navigable water bodies . . ." Thus, the rights asserted by intervenors are common to all citizens of Louisiana.

> In order to participate in a lawsuit, a party must have an actionable right, i.e., an interest of which a court may take cognizance. In *League of Women Voters of New Orleans v. City of New Orleans,* 381 So.2d 441 (La.1980), the court stated:

>> "A public right or duty may not be compelled or enforced by a private citizen without a showing of a personal grievance or interest in the outcome."

> The court held that the League of Women Voters of New Orleans had no right of action to challenge the tax collections at issue in that case. The court reached this conclusion after making the following observation concerning the plaintiff's asserted interest:

>> "Their [the League's] general allegations of jeopardy to their interest in receiving sufficient police, fire and flood protection and other services are not peculiar to plaintiffs

> themselves or even to taxpayers as a class, but are common to the public at large."
>
> The court required a special interest that was separate and distinct from the interest of the public at large. Thus, La.C.C.P. art. 681, which was cited by the court in *League of Women Voters*, states, "Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts."
>
> Regarding the interests asserted by intervenors in the instant case, if the State of Louisiana had ownership of the land in controversy, the intervenors had a right to use and enjoy this land. However, as stated above, the rights asserted by intervenors are the same rights of every other citizen in the State of Louisiana.
>
> The proper procedural mechanism available for asserting the rights of all the citizens of a state, such as are involved in the instant case, is for the state to bring the action. A class action is inappropriate and unnecessary in this case. The rights asserted by intervenors are incidents to ownership of the land being vested in the State.

*Id*. at 70 (alteration in original).

In *Danzy*, where the intervenors also asserted an interest in the profits made by Danzy in cutting the timber, we upheld the trial court's judgment of no right of action as to the intervenors. We agreed with and quoted from the trial court's reasons for judgment, wherein the trial court stated:

> "As to the nature of public things, the court in *City of New Orleans v. Carrollton Land Co.*, 131 La. 1092, 1095, 60 So. 695, 696 (1913), said that 'such property is out of commerce. It is dedicated to public use, and held as a public trust, for public uses.'"
>
> "Thus this court holds that the respondents have no proprietary interest in the land at issue. In fact there has been no determination as to whether the state is indeed the true owner of the land at issue. The state is the owner of public land and should the outcome of the case in chief be in favor of the state, only the state and not its individual citizens, may demand an accounting or damages from one who has held the land as owner."

*Id*.

17

Similarly, in the present case, our *de novo* review of Plaintiffs' allegations, conducted in light of the legal principles governing exceptions of no cause of action, reveals that Plaintiffs did not state a cause of action to fix numerous boundaries between the land of the owners and lessees and the navigable waters of the State of Louisiana. Nor do *these particular plaintiffs* have a right of action to fix such boundaries because the Plaintiffs herein are not owners, lessors, lessees, legal or conventional usufructuaries, or adverse possessors of the properties at issue.

**Mandamus Cause of Action Compelling State To Fix Boundary**

Plaintiffs contend that they have a cause and right to bring a writ of mandamus against the State of Louisiana, compelling the State to fix the boundaries for public use of the waterways and "banks" of the Atchafalaya Basin.

In response to Plaintiffs' restated petition seeking a writ of mandamus to compel the State of Louisiana to bring the boundary action against the landowners on behalf of the public users, the State asserts that Plaintiffs have no cause or right of action to survey a high water boundary throughout the Atchafalaya Basin, which is not a true boundary, and that the State has no ministerial duty to sue its own citizens in an action that is not clearly provided for under the law. The State further argues that it has no dispute and no interest in bringing a conventional boundary action against adjacent landowners. Because of the ambulatory nature of the line of high water in the Atchafalaya Basin, such a contour line as sought is ever-changing day-to-day and year-to-year and would be an extraordinarily expensive exercise with limited value and short duration. The State particularly objects to the Plaintiffs' reliance upon conventional boundary law to obtain global rights to use all areas of the Basin for all purposes.

As the State asserts, mandamus is an extraordinary remedy which is used sparingly by the courts to compel something that is clearly provided by law, and only where it is the sole available remedy or where the delay occasioned by the use of any other remedy would cause injustice; it does not issue in doubtful cases, nor where there is any element of discretion left to the public officer. Mandamus lies only to compel performance of purely ministerial duties. *Wiginton v. Tangipahoa Parish Council*, 00-1319 (La.App. 1 Cir. 6/29/01), 790 So.2d 160, *writ denied,* 01-2541 (La. 12/07/01), 803 So.2d 971. A writ of mandamus is not an appropriate procedure where there is an element of discretion left to the public officer. *Schmill v. St. Charles Parish*, 96-894 (La.App. 5 Cir. 3/12/97), 692 So.2d 1161.

The mandamus articles at issue are La.Code Civ.P. arts. 3682 and 3683, which provide in pertinent part as follows:

**Art. 3862. Mandamus; issuance of**

A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice; provided, however, that no court shall issue or cause to be issued a writ of mandamus to compel the expenditure of state funds by any state department, board or agency, or any officer, administrator or head thereof, or any officer of the state of Louisiana, in any suit or action involving the expenditure of public funds under any statute or law of this state, when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.

**La.Code Civ.P. art. 3863. Person against whom writ directed**

A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor.

The official comments under Article 3863 provide as follows:

(a) A typical and probably the most frequent use of the writ against a public officer is in a proceeding to compel the recorder of mortgages to cancel an illegal or unauthorized inscription. *See State ex rel. Code v. Code*, 215 La. 485, 41 So.2d 62 (1949).

(b) The following rules established by the jurisprudence are retained:

Mandamus will issue only when there is a clear and specific right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. It may be used only to compel the performance of purely ministerial duties. *State ex rel. Hutton v. City of Baton Rouge*, 217 La. 857, 47 So.2d 665 (1950); *State ex rel. Loraine, Inc. v. Adjustment Board*, 220 La. 708, 57 So.2d 409 (1952).

(c) It has been held that a citizen taxpayer has no legal standing to enforce performance of a public officer's duty to the public at large, unless clearly shown to have special and peculiar interest, apart from the interest of the general public. *Cleveland v. Martin*, 29 So.2d 516 (La.App. 1947).

As stated in the Official Revision Comments to Article 3863, mandamus will issue only when there is a clear and specific right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. "Our jurisprudence is clear that such writ may not issue to compel performance of an act which contains any element of discretion, however slight. Rather, the act must be purely ministerial." *Big Train Constr. Co., Inc. v. Parish of St. Tammany*, 446 So.2d 889, 890 (La.App. 1 Cir. 1984). In the present case, there is no existing law that grants the Plaintiffs a right or imposes a duty upon the State to have numerous water boundaries surveyed throughout the Atchafalaya Basin along the inundated lands of the owners and lessees herein.

In *Louisa Seafood Co., Inc. v. Louisiana Wildlife and Fisheries Com'n.*, 546 So.2d 571 (La.App. 1 Cir. 1989), applicants for an oyster lease filed suit for mandamus relief to compel issuance of the lease. The trial court dismissed the action.

The appellate court looked at the law concerning oyster leases, La.R.S. 56:423, *et seq.*, which provided under section A that the secretary *may* lease any state-owned water bottoms, and stated under section D that the department *may* settle all disputes as to boundaries between lessees of bedding grounds. Accordingly, the court of appeal affirmed, holding that the decision to lease any or all of the acres listed in the application remained discretionary. Thus, neither mandamus nor injunctive relief was appropriate.

In the present case, Plaintiffs direct their writ of mandamus to Louisiana's Secretary of the Department of Natural Resources, Administrator of the State Land Office, and Attorney General, compelling them according to their statutory duties under La.R.S. 41:1701, 41:1701.1, and 36:702[1] respectively, to

_____

[1]Those articles provide in pertinent part as follows:

**La.R.S. 41:1701. Declaration of policy; public trust**

The beds and bottoms of all navigable waters and the banks or shores of bays, arms of the sea, the Gulf of Mexico, and navigable lakes belong to the state of Louisiana, and the policy of this state is hereby declared to be that these lands and water bottoms, hereinafter referred to as "public lands", shall be protected, administered, and conserved to best ensure full public navigation, fishery, recreation, and other interests. Unregulated encroachments upon these properties may result in injury and interference with the public use and enjoyment and may create hazards to the health, safety, and welfare of the citizens of this state. To provide for the orderly protection and management of these state-owned properties and serve the best interests of all citizens, the lands and water bottoms, except those excluded and exempted and as otherwise provided by this Chapter, or as otherwise provided by law, shall be under the management of the Department of Natural Resources, hereinafter referred to as the "department". The State Land Office, hereinafter referred to as the "office", shall be responsible for the control, permitting, and leasing of encroachments upon public lands, in accordance with this Chapter and the laws of Louisiana and the United States."

(Footnote omitted).

**La.R.S. 41:1701.1. State Land Office; powers, duties, functions, and responsibilities**

A. The duties of the State Land Office shall be under the administration of a public lands administrator and a deputy public lands administrator who shall be responsible for performing the functions set forth in this Chapter unless otherwise specified.

B.  The State Land Office shall be composed of four sections as follows:

(1) The administrative section, which shall be responsible for the administration, control, and operation of the functions and programs of the office.

(2) The land and water bottom section, which shall be responsible for management of the programs within the statutory responsibility and authority of the State Land Office relating to the beds and bottoms of navigable waters and the banks or shores of the bays, arms of the sea, the Gulf of Mexico, and navigable lakes which belong to the state of Louisiana, and those over which the state has acquired the right to navigate by conventional agreement or otherwise, which shall be protected, administered, and conserved to best ensure full public navigation, fishery, recreation, and other interests.

(3) The historical records section, which shall be responsible for the maintaining of records and plats of state and federal land sold; maintaining a state land and building inventory system; and maintaining tax adjudication documents.

(4) The titles and surveys section, which shall be responsible for the determination of titles and surveys pertaining to state lands and water bottoms using the records of the office and its field assets in such determinations.

C.  Subject to the approval of the commissioner of administration, the governor, the attorney general, the Department of Wildlife and Fisheries, and the Department of Natural Resources, the State Land Office shall develop and promulgate a comprehensive state master plan for the administration of state lands and water bottoms and shall ensure that all public lands and water bottoms are protected, administered, and conserved in a manner consistent with the constitution.

D.  The State Land Office shall identify all public lands and water bottoms within the state and develop and maintain a current master list of those lands and water bottoms.  All state agencies, including but not limited to Department of Culture, Recreation and Tourism, the Department of Natural Resources, the Department of Wildlife and Fisheries, the Department of Transportation and Development, the Louisiana Geological Survey, the state's colleges and universities, all levee boards, drainage boards, parish governing authorities, and any districts created under the jurisdiction of levee boards, drainage boards, or parish governing authorities, shall cooperate with the State Land Office in developing the master list.

E.  The State Land Office is hereby authorized to conduct meetings, hold public hearings, and appoint advisory committees to assist the office in its duties.  In accordance with law, the office may accept gifts, donations, and bequests which may assist the office in

fix the requested boundary under La.Code Civ.P. art. 3691, *et seq*.

Based upon the foregoing, we find no mention of a ministerial duty, law, or ordinance articulated in plain and unmistakable terms requiring any of the listed State officials to fix numerous "high water" boundaries against the owners and lessees of the inundated lands in the Atchafalaya Basin pursuant to any of the

---

the performance of its duties.

F. The State Land Office shall have the authority to develop and promulgate necessary rules and regulations in accordance with the Administrative Procedure Act.

G. None of the duties and responsibilities or organization of the State Land Office as provided in this Section shall supersede or modify the authority granted to any other state agency.

**La.R.S. 36:702. Powers and duties of attorney general**

In addition to the functions, powers, and duties otherwise vested in the attorney general, he shall:

(1) Represent the public interest in the administration of this Chapter and shall be responsible to the legislature and the public therefor.

(2) Employ, appoint, remove, assign, and promote such personnel as is necessary for the efficient administration of the department.

(3) In accordance with the Administrative Procedures Act, make, alter, amend, and promulgate rules and regulations necessary for the administration of the functions of the department.

(4) Organize, plan, supervise, direct, administer, execute, and be responsible for the functions and programs vested in the department, in the manner and to the extent provided by this Title.

(5) Make and publish an annual report to the legislature concerning the operations of the department. . .

(6) Provide for the ongoing reorganization and consolidation of the department and submit a report . . .

(7) Do such other things, not inconsistent with law, as are necessary to perform properly the functions vested in him.

boundary articles cited by Plaintiffs. In fact, unlike the case of the oyster fishermen who sought leases from the State according to specific statutes addressing oyster leases in *Louisa Seafood*, there is no indication of even a discretionary basis for the State to fix such boundaries. Under La.R.S. 41:1701.1. B(4), the State Land Office is generally responsible "for the determination of titles and surveys pertaining to state lands and water bottoms using the records of the office and its field assets." However, this section does not impose the burden of suing numerous landowners to fix boundaries not required by law, where neither the State nor the owners dispute the boundary.

As the State asserts, as "users of water rights" and "navigators," Plaintiffs seek a legal remedy not provided by law to define precise limits of high water over numerous inundated private lands not under the control of the State, and attempt to require the State to sue its own citizens to achieve such a remedy. The State further asserts that Plaintiffs' rights to use State lands and navigate over State water bottoms are not being restricted or abridged by State defendants but are being actively protected by State defendants on a daily basis. The State maintains that Plaintiffs have active daily contact with State defendants and are well aware of the efforts made to afford all citizens their legal rights of passage and usage of public lands and water bodies.

We find no ministerial duty of the State and, therefore, no cause of action in Plaintiffs' petition to compel the State to survey and fix numerous high water boundaries throughout the Atchafalaya Basin against the owners and lessees of the inundated lands therein.

## Right of Action for Mandamus

In reviewing the statutes providing the general duties of the various State officials and the jurisprudence addressing those duties, we are struck by the overly-broad goal that the Plaintiffs as mere public users have stated in their petition and the unreasonable task that they would impose upon the State. Proving their standing and limiting their action to a justiciable controversy is a function of the right of action, and their failure to limit their action results in a finding of no right of action herein. For example, *see Sewell v. Huey*, 00-0385 (La.App. 4 Cir. 1/24/01), 779 So.2d 1003 (A taxpayer cannot compel the performance of a public duty by mandamus absent a showing of some special interest which is separate and distinct from the interest of the public at large). *See also Cleveland v. Martin*, 29 So.2d 516 (La.App. 1947) (A citizen taxpayer has no legal standing to enforce the performance of a public officer's duty to the public at large, unless clearly shown to have special and peculiar interest, apart from the interest of the general public).

It is instructive to contrast the lack of standing of Plaintiffs herein, and the type of action sought by Plaintiffs, with the cases interpreting the mandamus action under La.Code Civ.P. arts. 3862 and 3863. To clarify, we turn again to *Louisa Seafood*, 546 So.2d 571, where the denial of mandamus was based upon the discretionary nature of the State's consideration of oyster lease applicants, not on the plaintiffs standing to bring the action. In that case, the plaintiff was a particular seafood company who filed an application with the State under specific statutes setting forth specific procedures for leasing from the State a specific portion of its waterbottoms for the specific purpose of fishing for oysters. Louisiana Revised Statutes 56:427 (A) provides in pertinent part:

> Any person who qualifies under this Subpart and
> who desires to lease a part of the bottom or bed of any of
> the waters of this state . . . shall present to the secretary a

25

written application, with a cash deposit of such amount as is determined by the department. This application shall contain . . . a reasonably definite description of the location and amount of land covered by water desired by the applicant. The applicant shall ask that the application be registered, that the water bottom be surveyed, that a plan or map of survey thereof be made, and that the water bottom described be leased to the applicant under the provisions of this Subpart. The department shall then register the application, shall order an examination to determine whether the bottoms applied for are leasable [sic], and shall determine the basis upon which the rental of the lease shall be fixed. If the area is found to be leasable, a survey and plan shall be made at the expense of the applicant. . .

As we stated previously, mandamus was denied in the above case, but not because the applicants had no standing to bring a mandamus action. Clearly, they did. They filed an application and attempted to follow the proper procedures. In fact, after hiring a surveyor for over $1,200 and paying Department fees, their lease could not be issued because the survey did not remain within the written description of the acreage on the application. We discuss this case in our analysis of no right of action to illustrate what special and peculiar interests a plaintiff will need in order to bring a mandamus action against the State. We also discuss the case to demonstrate what kinds of actions and limited surveys we believe the Articles require when imposing duties upon the State.

By contrast, in the present case, Plaintiffs do not seek a lease of limited acreage in a particular state-owned water bottom nor do they assert improper handling of a lease application by the State. They do not assert ownership or lessee privileges of a piece of land adjacent to a state-owned waterbody and allege commissions, omissions, or encroachments by the State in managing that particular waterbody. Rather, they seek broad public access to tens of thousands of acres of water-covered land against title holders with real rights and against contractual holders and possessors of that land who have stated clear rights. In fact, one of the Defendants

herein has obtained an injunction against public users such as Plaintiffs for improper access. *See Buckskin Hunting Club*, 868 So.2d 266, where we affirmed a permanent injunction for Buckskin Hunting Club, holding that the lessee had legal capacity to enjoin trespassing by other hunters, that private canals were not navigable waters subject to public use, and that hunting on the riverbanks of lessee's property was outside the scope of permitted public use.

Plaintiffs herein have little more than the argument that their ancestors "always" had access to the waters of the Atchafalaya Basin. We cannot avoid the observation that where one owner of long ago may have invited the public to fish and hunt his land, a modern owner may be less generous, or more concerned with liability associated with free access, or obligated to his lessors who pay for the privilege of access. The argument that a thing has "always" been done, does not provide a cause or right of action. We understand that Plaintiffs *claim* to seek access only to land and water subject to public use, but they have cited no legal authority that places the burden upon the State to go out and survey thousands of acres in the Atchafalaya Basin under the facts and law stated in their petition.

### The Declaratory Judgment Action Against the State

As to Plaintiffs' action for declaratory judgment, the trial court denied the exceptions of no cause of action and no right of action filed by the private landowners and lessees, and the record indicates that the trial court has asked that discovery go forward as to that action. However, the trial court dismissed "all of the demands of the plaintiffs against the State of Louisiana." Since the petitions contained a request for declaratory judgment when the State was added as a defendant, we must review the declaratory action as it pertains to the State. Plaintiffs' petition asserts general statutes granting broad public rights and seeks a declaratory

27

judgment decreeing that those statutory rights apply and ordering that the waters and areas in question be kept open to public use for navigation, fishing, trapping, hunting, crawfishing, recreation, and other traditional riverine and lacustrine uses. They also seek a declaration that they are entitled to fishing access and other uses below ordinary high water mark in the present and former beds of Lake Chetimaches. They seek a declaration that the waters in controversy are all running waters or bottoms of natural navigable waterbodies, subject to the rise and fall and influence of the tides and are, therefore, public things subject to public use.

As authority for the declaratory judgment, Plaintiffs cite Article 9, Section 1 of the Louisiana Constitution of 1974; La.R.S. 41:14; La.R.S. 53:3 [56:3]; La.R.S. 41: 1701; and, La.Civ.Code arts. 450, 452, 456, and 458.[2]

---

[2]Other than La.R.S. 41:1701 and La.Civ.Code art. 456, which have been cited previously, these additional statutes provide in pertinent part as follows:

**[La.Const. art. 9] § 1.  Natural Resources and Environment; Public Policy**

Section 1.

The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.

**La.R.S. 56:3. Ownership of wild birds, quadrupeds, fish, aquatic life, water bottoms, oysters, and shellfish**

A.  The ownership and title to all wild birds, and wild quadrupeds, fish, other aquatic life, the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico within the territory or jurisdiction of the state, including all oysters and other shellfish and parts thereof grown thereon, either naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, are and remain the property of the state, and shall be under the exclusive control of the Wildlife and Fisheries Commission except as provided in R.S. 56:4.

B.  Wild birds, quadrupeds, fish, other aquatic life, and the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico, within the territorial jurisdiction of the state, including all oysters and other shellfish and parts thereof grown thereon, either

naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, shall not be taken, sold, or had in possession except as otherwise permitted in this Title; and the title of the state to all such wild birds, quadrupeds, fish, and other aquatic life, even though taken in accordance with the provisions of this Title, and the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets always remains in the state for the purpose of regulating and controlling the use and disposition thereof.

**La.R.S. 41:14. Conveyances of waterbottoms, ownership**

No grant, sale or conveyance of the lands forming the bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico within the territory of jurisdiction of the state shall be made by the secretary of the Department of Natural Resources or by any other official or by any subordinate political subdivision, except pursuant to R.S. 41:1701 through 1714. Any rights accorded by law to the owners or occupants of lands on the shores of any waters described herein shall not extend beyond the ordinary low water mark. No one shall own in fee simple any bottoms of lands covering the bottoms of waters described in this Section.

**La.Civ.Code art. 450. Public things**

Public things are owned by the state or its political subdivisions in their capacity as public persons.

Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.

Public things that may belong to political subdivisions of the state are such as streets and public squares.

**Art. 452. Public things and common things subject to public use**

Public things and common things are subject to public use in accordance with applicable laws and regulations. Everyone has the right to fish in the rivers, ports, roadsteads, and harbors, and the right to land on the seashore, to fish, to shelter himself, to moor ships, to dry nets, and the like, provided that he does not cause injury to the property of adjoining owners.

The seashore within the limits of a municipality is subject to its police power, and the public use is governed by municipal ordinances and regulations.

**Art. 458. Works obstructing the public use**

Works built without lawful permit on public things, including the sea, the seashore, and the bottom of natural navigable waters, or on the banks of navigable rivers, that obstruct the public use may be removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.

29

With regard to the statutes cited, we point out that Plaintiffs are not seeking a declaration against the State that any statute is unconstitutional, which has been held to be an appropriate use of declaratory judgment procedure. Rather, Plaintiffs seek a declaration that the statutes do apply. The State is not disputing that Plaintiffs have rights to access public waters and that these general statutes apply. The State argues that Plaintiffs' action against the State is speculative and theoretical, and that they have stated no "justiciable controversy" and no actual dispute involving the State. We agree. Plaintiffs request declaratory judgment on numerous complex issues that are not ripe for adjudication, rendering a request for declaratory judgment against the State inappropriate.

The trial court has granted the exceptions of improper cumulation, and the transcript indicates that Plaintiffs must narrow their claims and bring individual suits. Numerous trials must ensue to determine which bodies of water are navigable lakes with banks and bank servitudes, which ones are sloughs or mud flats, which bodies are non-navigable streams, bayous, bays, lakes, lagoons, basins, depressions, flooded swamp, marshland, riparian land, land subject to inland rights, fee ownership, and the issues go on and on. Plaintiffs have repeatedly asserted overbroad rights of access to the waters of the Atchafalaya Basin. Defendants complain that 400,000 acres could be involved and that over 85,000 acres of these are privately-owned by the Defendants.

At the trial of the numerous exceptions, Plaintiffs argued, "But it shouldn't be restricted, Your Honor. These crawfishermen crawfish all over. . . . Mr. Trowbridge or his client shouldn't be able to limit the area that my clients can fish."

---

The owner of the works may not prevent their removal by alleging prescription or possession.

The trial court responded by stating, "He's filed an Improper Cumulation saying it's all cumulated together and it's improper, and I've agreed with him. I said each plaintiff should bring an action against each landowner in a particular area." The record indicates that one suit alone could cover 6,000 acres of land and water.

Since Plaintiffs cannot seriously ask the court to declare that all waters at issue are state-owned "running waters" subject to public use at this juncture, the request for declaratory judgment against the State is tantamount to a mandamus action seeking to compel the state to declare rights not adjudicated. The Plaintiffs have not stated a cause of action against the State and have no standing to compel the State to make such broad declarations on their behalf.

In *Abbott v. Parker*, 259 La. 279, 308; 249 So.2d 908, 918 (1971) (citations omitted), the Louisiana Supreme Court, through Justice Tate, stated:

> The declaratory relief is sought by virtue of La.CCP Arts. 1871-83. These substantially incorporate the provisions of the Uniform Declaratory Judgments Act.
>
> The consistent interpretation of the Uniform Act and of our own code articles is that declaratory relief is available only to decide justiciable controversies, and that such enactments do not empower the courts to render advisory opinions on abstract questions of law.
>
> A 'justiciable controversy' connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further, the plaintiff should have a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

"[T]he dispute at issue must involve the legal relations of the parties who have adverse interests, which can be determined in a conclusive manner at that stage of the proceedings." *Couvillion v. James Pest Control, Inc.*, 98-2382, p. 3 (La.App.

31

4 Cir. 3/3/99), 729 So.2d 172, 174. Within its scope, the declaratory judgment provides a simplified procedural device for trial of all classes of civil cases and vests in the courts a wide discretion in each instance to determine whether the action is properly one for declaratory relief as distinguished from a direct action. *Superior Oil Co. v. Reily*, 234 La. 621, 100 So.2d 888 (1958); *State v. Bd. of Supervisors, Louisiana State Univ. & Agric. & Mech. Coll.*, 228 La. 951, 84 So.2d 597 (1955). Appellate courts, as well as the trial court, are granted broad discretionary power to determine whether a suit is one in which declaratory relief may be appropriate. *Orleans Parish Sch. Bd. v. City of New Orleans*, 238 La. 748, 116 So.2d 509 (1959); La.Code Civ.P. art. 1876; *Michell v. Louisiana State Bd. of Optometry Exam'r*, La.App., 128 So.2d 825; *See Gulotta v. Cutshaw*, 258 So.2d 555 (La.App. 1 Cir. 1972), *rev'd on other grounds,* 283 So.2d 482 (La.1973).

It is the nature of the relief sought and the character of the issues involved that determine whether an action for declaratory judgment is appropriate in a given case, or whether plaintiff should be required to bring a direct action under ordinary procedure. In addition, the purpose of declaratory action is "to promote the simple, expedient trial of cases where the nature of the questions involved lend themselves readily to trial without the usual formalities to the end that resolution may be speedily achieved." *Gulotta,* 258 So.2d 559. With regard to an action against the State, this case does not fall into that category.

IV.

**CONCLUSION**

Our *de novo* review of Plaintiffs' allegations and the evidence presented, conducted in light of the legal principles governing exceptions of no cause of action and no right of action, reveals that the trial court properly granted the Defendants'

32

exceptions of no cause of action and no right of action to fix the numerous boundaries requested in the Atchafalaya Basin and properly granted the State's exceptions in the mandamus action to compel the State to fix the requested boundaries against the Defendant landowners and lessees, and properly dismissed the State from all demands against it.

All costs are assessed against the Plaintiffs-Appellants.

**AFFIRMED.**