631 So.2d 725 (1994)
Alvin B. CARAVALHO, Plaintiff-Appellant,
v.
DUAL DRILLING SERVICES, INC., Defendant-Appellee.
No. 93-560.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
Rehearing Denied March 11, 1994.
*727 Paul Boyd Wilkins, Columbia, for Alvin B. Caravalho.
James E. Diaz, Lafayette, for Dual Drilling Services, Inc.
Before LABORDE, THIBODEAUX and DECUIR, JJ.
LABORDE, Judge.
Plaintiff, Alvin Caravalho, filed suit under the Jones Act and general maritime law, alleging that he injured his back due to unseaworthiness of a vessel and/or negligence on the part of his employer, defendant Dual Drilling Services. The trial court found no negligence on the part of defendant and no proven unseaworthiness of its vessel. Finding no error on the part of the trial court, we affirm.

FACTS
Plaintiff, Alvin Caravalho, was employed by defendant, Dual Drilling Services, as a floorhand on Dual's Rig 41 located in the Gulf of Mexico. On August 27, 1991, plaintiff went on duty at midnight. From midnight until approximately 12:30 a.m., the drilling crew finished "tripping pipe" to roughly 15,000 feet. From 2:30 to 5:30 in the morning, they pumped a slug and pulled out of the hole approximately 80 stands (three joints of pipe per stand). From 5:30 to 8:00 in the morning, the drilling crew tripped in the hole to 15,080 feet.
In "tailing pipe" (bringing subsequent stands from the pipe rack to the rotary), the crew removes stands of pipe that are stacked on the pipe rack adjacent to the drill floor and consecutively places them in the hole on the drilling floor. As the driller picks up a stand of pipe with a hoist or crane he swings it toward the "rotary," a rotating portion of the floor surrounding the drill hole. Two floorhands ("roughnecks") operate the tongs used to handle the stands of pipe to be placed in the hole with the assistance of a third floorhand (in this case plaintiff) whose responsibility also includes tailing pipe.
Early in the morning in question, plaintiff Alvin Caravalho positioned himself between the standing pipe and the rotary, as it was his job to make certain that the pipe did not swing across the drill floor and strike the other members of the drill crew. Ordinarily, as the pipe swings toward Alvin, he steps back, turns to his left, and changes the pipe from his right hand to his left hand; then he walks the pipe over to the rotary and connects it to the pipe sticking up from the rotary.
Plaintiff alleges that his back was injured because the driller picked up the stand of pipe too quickly. According to his testimony, he had his right hand on the pipe when the pipe moved toward him, kicked away, then suddenly whipped right back at him. When the pipe suddenly whipped back at him he still had his right arm extended; he theorizes that the pipe hit his right hand with such force that it caused him to suddenly hyperextend his back.

AT TRIAL

Plaintiff's Case
At trial, the plaintiff alleged four separate grounds for recovery based on defendant's negligence and/or unseaworthiness of the vessel: (1) attempting to trip pipe without having a crew member on the belly board to restrain the pipe; (2) failing to have a crew member place a "tag" or "snub" line around the pipe to prevent excessive kicking of the pipe when the pipe was raised; (3) attempting to operate the draw works at an excessive speed while tripping pipe; and (4) failing to furnish a safe procedure and an adequate and well-trained crew.
In addition to claiming negligence of the driller in picking up the pipe too fast, plaintiff alleged that the vessel was unseaworthy for its failure to use tag (snub) lines[1] and failure to use a belly or middle board[2] in the *728 drilling operation. Plaintiff further alleged that defendant failed to furnish an adequate and well-trained crew, and that the procedure followed by the drilling crew was unsafe.
Whatever the cause of his injury, Alvin claimed at trial to have immediately felt a pop in his back with the immediate onset of pain.

Defendant's Case
Defendant alleged that plaintiff's injury was not due to the negligence of the driller in moving the pipe too fast but rather plaintiff's not paying attention.
Defendant further denied any unseaworthiness of the vessel for failure to use tag lines or a belly board, as they were unnecessary for a safe drilling operation.

Findings and Judgment Below
After the bench trial the trial court found no liability on the part of defendant. In his written reasons for ruling, the trial judge found that plaintiff was a Jones Act seaman, but did not prove negligence on the part of defendant or that the rig was unseaworthy. The court stated that the plaintiff failed to carry his burden of proof in establishing that the accident was caused by the driller picking up the pipe too fast, as the only evidence on this point was plaintiff's own testimony which he himself contradicted several times. The court held that the crew was competent and that the procedure and equipment used was adequate. As to the unseaworthiness claims, the court found no merit to plaintiff's claims that a belly board and tag line should have been used in the tailing operation, as there was overwhelming evidence establishing that neither of these items are necessary for a safe tailing operation.

ANALYSIS
Claims based on negligence and unseaworthiness are separate and distinct, but the factfinder's conclusions as to each are treated similarly on review. Such findings of fact may not be disturbed unless clearly erroneous. Spangler v. North Star Drilling Co., 552 So.2d 673 (La.App. 2 Cir.1989).
Each of plaintiff's assigned errors questions whether the trial judge correctly evaluated the evidence presented at trial. A court of appeal is bound by a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La. 1993); Rosell v. ESCO, 549 So.2d 840 (La. 1989). Our review of the law and evidence leads us to conclude that the trial judge was not clearly wrong in his credibility assessments occasioned by his first-hand impressions of the witnesses before his court.

UNSEAWORTHINESS
A claim of unseaworthiness falls under the general maritime law, in which the vessel owner has an absolute duty to furnish a seaworthy vessel, that is, a vessel and appurtenances which are reasonably safe and fit for their intended use. Among the conditions which render a vessel unseaworthy, imposing liability on a vessel owner for injuries, are defective gear, appurtenances in disrepair, and an unfit or insufficient crew. Spangler, supra, at 677.
The seaman's burden in an unseaworthiness case is to show that the vessel was unseaworthy and that the condition caused his injury. Id. at 677. At trial, plaintiff attempted to show that the rig was unseaworthy because of defendant's failure to use tag lines or belly boards to prevent possible whipping of pipe during a tailing operation. In support of this argument, plaintiff presented two experts. G.A. Tomlinson, an engineer and expert in the design of oil field drilling equipment, testified that pipe could whip violently if it was traveling at a certain speed, and that use of tag lines or belly boards reduces the whipping effect of pipe. Michael Gates, a directional drilling consultant, corroborated Tomlinson's testimony that a tag line would prevent whipping of the pipe during a tailing operation, stating that he has seen such tag lines used on rigs in *729 South America, Africa, and West Texas. Plaintiff also claims that the rig was unseaworthy due to defendant's failure to furnish a safer procedure and an adequate, welltrained crew. In support of this argument, expert Tomlinson stated that the driller mistakenly assumed that pipe picked up faster is necessarily more difficult for the floorhand tailing pipe to handle.
On the other hand, defendant presented witnesses Robert Owen, R.B. Linke, and Richard Tuberville, each of whom testified that it is not necessary to use tag/snub lines or belly/middle boards for a safe tailing operation. In fact, Tuberville testified that the only instance in which he was aware of tag lines or belly boards being used was on a rig in Indonesia, where the rig workers, weighing only 80 to 100 pounds, were much smaller than American workers.
Similarly, plaintiff's theory that the driller had been improperly trained was rebutted by employees who had worked with Todd Bozeman. They testified that he was known as a safe driller.
Applying the oft stated standards of appellate review, we find no error in the trial court's finding of fact that the vessel was not unseaworthy. Where the testimony of expert witnesses differ, it is the trier of fact who must determine the most credible evidence, and such findings of fact may not be overturned unless manifest error appears in the record. Economy Auto Salvage v. Allstate Ins. Co., 499 So.2d 963 (La.App. 3 Cir.), writ denied, 501 So.2d 199 (La.1986).

NEGLIGENCE AND CAUSATION
Alternatively, plaintiff claims that the accident was caused by the driller's negligence in operating the draw works too fast. In contrast to a claim for unseaworthiness, in a claim for negligence under the Jones Act, it is the conduct of the defendant which is at issue, not the defective condition itself. To prevail in a negligence claim, the plaintiff has to show that the defendant failed to exercise reasonable care in the maintenance of a safe work environment. Spangler, supra, at 678; Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982). Under the Jones Act, an employer is liable for the injuries negligently inflicted on its employees by its agents, officers and employees. Spangler, supra; Portier v. Texaco, Inc., 426 So.2d 623 (La.App. 1 Cir. 1982), writ denied, 433 So.2d 165 (La.1983). Evidence of the slightest negligence is sufficient to sustain a finding of Jones Act liability. The burden on a plaintiff for showing causation in a Jones Act claim is "featherweight." Johnson v. Offshore Exp., Inc., 845 F.2d 1347 (5th Cir.), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988).
We find no evidence that the trial court erred in evaluating plaintiff's claim of Jones Act negligence. Plaintiff presented substantial evidence as to the condition of his back, but little evidence as to the causation of the injury except his own testimony.[3] Although the burden of proof in a Jones Act case is very light ("featherweight"), the plaintiff must show more than the injury itself in order to recover; plaintiff must show some evidence of defendant's negligence. Johnson, supra; Daugherty v. Cross Marine, Inc., 598 So.2d 595 (La.App. 4 Cir.1992).
Immediately after he was injured, plaintiff only reported the injury. He did not claim that the injury was caused by the whipping of the pipe. Nor did he mention the cause of his injury to any of his fellow employees; he stated only that he had pulled a muscle in his back. It was only after commencement of litigation that plaintiff told of the pipe whipping to cause his injury. The trial judge presiding over the proceeding concluded that plaintiff's testimony was not credible, and we are loathe to upset his conclusions from a cold transcript. A finding of liability by a trial court is a finding of fact which a reviewing court may not disturb unless the record evidence does not furnish a sufficient basis for that finding, or the finding is clearly wrong. Trahan v. State, DOTD, 536 So.2d 1269 (La.App. 3 Cir. 1988), writ denied, 541 So.2d 854 (La.1989). Further, where there are two permissible *730 views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Because the trial court concluded that plaintiff produced no credible basis for imposing liability, it could not correctly hold that defendant was negligent. Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La.1991). Nothing contained in the record suggests a manifest error in this case.

CONCLUSION
Plaintiff did not carry his burden of proof linking his back injury to his employer. At a minimum, there was no manifest error or abuse of discretion in the trial court's ruling in this case. Thus, we affirm the trial court's decision finding no liability on the part of the defendant, Dual Drilling Company.

DECREE
The trial court's ruling is affirmed. Costs assessed to plaintiff-appellant, Alvin Caravalho.
AFFIRMED.
NOTES
[1] According to plaintiff's brief, a tag or snub line is a piece of rope that is tied off at one end to a stationary object with the other end being wrapped around the pipe.
[2] According to defendant's brief, a belly board is a hook positioned at mid-derrick to lend support for the handling of limber production tubing (pipe) in the production of a well, while a middle board is a board at mid-derrick where an additional person can be placed to assist in handling their production tubing. Plaintiff claimed these devices would protect floorhands from the whipping action of the pipe by limiting its movement to predictable patterns.
[3] None of the other employees who were working with plaintiff at the time of the accident witnessed the accident.