NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-70
Consolidated with 21-71, 21-72

SUCCESSION OF WILLIS P. CONQUES

Consolidated with

KATHERINE CONQUES FREEMAN
AND RAYMOND TROY FREEMAN

VERSUS

WAYNE ANNOUNCE CONQUES, ET AL.

Consolidated with

KATHERINE ANN CONQUES FREEMAN

VERSUS

CAMILLE CONQUES HENRY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2012-0412
(consolidated with 2015-0075, 2017-7397)
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE PRO TEMPORE

**********

CHARLES G. FITZGERALD
JUDGE

**********

Court composed of Candyce G. Perret, Sharon Darville Wilson, and Charles G. Fitzgerald, Judges.

AFFIRMED IN PART; REVERSED IN PART;
REMANDED WITH INSTRUCTIONS.

**Mark Babineaux**
**Leger & Babineaux**
**309 West Main Street**
**Lafayette, Louisiana  70501**
**(337) 233-7766**
**Counsel for Plaintiff/Appellant:**
        **Katherine Ann Conques Freeman,**
        **as Independent Administrator of the**
        **Succession of Willis P. Conques**

**Paul D. Gibson**
**Thomas M. Long**
**Offering Solutions, PLLC**
**412 Travis Street, Suite C**
**Lafayette, Louisiana  70503**
**(337) 233-9600**
**Counsel for Plaintiffs/Appellants:**
        **Katherine Ann Conques Freeman**
        **Raymond Troy Freeman**

**John F. Craton**
**Barousse & Craton, LLC**
**Post Office Box 1305**
**Crowley, Louisiana  70527-1305**
**(337) 785-1000**
**Counsel for Defendants/Appellees:**
        **Wayne Announce Conques**
        **Adele Lelice Conques Romero**
        **Glenn William Conques**
        **Delphine Leota Conques Saltzman**
        **Joan Lucy Conques Bellard**
        **Marlene Ann Conques Newell**
        **Kathleen Ann Conques Roche**
        **Melanie Rose Conques Weber**
        **Camille Helen Conques Henry**

**Keith P. Saltzman**
**Anderson Dozier Blanda & Saltzman**
**Post Office Box 82008**
**Lafayette, Louisiana  70598-2008**
**(337) 233-3366**
**Counsel for Defendants/Appellees:**
        **Wayne Announce Conques**
        **Adele Lelice Conques Romero**
        **Glenn William Conques**
        **Delphine Leota Conques Saltzman**
        **Joan Lucy Conques Bellard**
        **Marlene Ann Conques Newell**
        **Kathleen Ann Conques Roche**
        **Melanie Rose Conques Weber**
        **Camille Helen Conques Henry**

**FITZGERALD, Judge.**

In this appeal, we are presented with issues arising from an executrix's management of property owned in indivision.

## FACTS AND PROCEDURAL HISTORY

Willis P. Conques and Lucy Domingue Conques were married and had twelve children. Lucy predeceased Willis. She died intestate in 1978. Her one-half interest in the community property was then divided equally among her twelve children, subject to a lifetime usufruct in favor of Willis.

Willis and Lucy's community property, in essence, consisted of a 2.57-acre tract of land which included the family residence, a 10-acre tract of land, and a 34-acre tract of land. After Lucy died, Willis converted the 10-acre tract into a trailer park. He operated the trailer park from 1979 until his death in June 2012.

Willis's notarial testament was probated a few weeks later. As to specifics, Willis bequeathed his one-half interest in the 2.57-acre tract to his daughter Katherine Conques Freeman; he bequeathed his one-half interest in the 10-acre tract to his daughter Katherine and her husband, Raymond Freeman; and he bequeathed his one-half interest in the 34-acre tract to three of his daughters (Katherine, Camille Conques Henry, and Kathleen Conques Roche) in equal portions. The testament also named Katherine as executrix.

Katherine, in turn, assumed responsibility for the management of all three properties, including the operation of the 10-acre trailer park. She did what she deemed was necessary to preserve, maintain, and repair the properties—doing so not only as the executrix of her father's estate, but also on behalf of her eleven co-owner siblings.

Two years after her father's death, in June 2014, Katherine filed a Petition for Possession with the following accompanying documents: (1) Usufructuary

Accounting of Succession of Willis P. Conques to Naked Owners of Lucy Domingue Conques; (2) Sworn Descriptive List of Assets and Liabilities of the Estate of Willis P. Conques and Tableau of Distribution; and (3) Accounting of Maintenance Expenses of Co-Owned Property Including Income of Trailer Park from July 2012 through June 2013. All eleven of Katherine's siblings were noticed and given ten days to file any opposition. Ten of the siblings did just that by moving to traverse both the descriptive list and annual accounting.

However, by Judgment of December 19, 2014, Katherine and her siblings consented to an amended descriptive list and accounting with the following reservation: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that traversal of the Annual Accounting filed in these proceedings shall be deferred until further proceedings or at such time as a Final Accounting is rendered." A Judgment of Possession was also signed by consent on December 19, 2014. At this point, the three immovables that comprised Willis and Lucy's former community property were co-owned in the following percentages:

- 2.57-acre tract with the family residence: Katherine owned an undivided $13/24^{th}$ interest; her eleven siblings each owned an undivided $1/24^{th}$ interest.

- 10-acre tract with the trailer park: Katherine owned an undivided $7/24^{th}$ interest; her husband, Raymond, owned an undivided $6/24^{th}$ interest; and the eleven other Conques siblings each owned an undivided $1/24^{th}$ interest.

- 34-acre tract of unimproved land: Katherine, Camille, and Kathleen each owned an undivided $5/24^{th}$ interest; the nine other siblings each owned an undivided $1/24^{th}$ interest.

Katherine continued to manage these properties for the next two years. Then, in December 2016, all three immovables were partitioned by licitation and sold at a sheriff's sale. The sale proceeds of approximately $1,300,000 were placed in trust pending a final accounting and distribution.

2

In July 2017, Katherine filed a Petition for Homologation of Final Account, Compensation, Disbursement and Discharge of Independent Administrator, along with an accompanying Final Account and Disbursement. The petition identified Katherine's eleven co-owner siblings by name, requesting that they "be duly notified of the filing of this account and to appear within ten (10) days and file opposition thereto, if any." Ten of the siblings did file an objection. The objection consisted mainly of complaints about Katherine's management of the trailer park.

In response, Katherine and her husband, Raymond, filed in the succession proceeding a joint Petition for Intervention. The petition asserted individual claims for reimbursement and unjust enrichment against Katherine's eleven co-owner siblings. While ten of the siblings answered the intervention, all eleven joined in filing a reconventional demand. The eleven siblings also joined in filing an amended objection to Katherine's final accounting.

The reconventional demand was dismissed by the trial court because leave had not been sought prior to its filing. Katherine, as executrix, also sought the dismissal of her siblings' amended objection by filing an exception of no right of action. The exception was overruled by Judgment of December 4, 2019.

Around this same time, Katherine filed a petition to amend the sworn descriptive list, specifically seeking to list the trailer park as a separate asset. Katherine's attempt to amend the descriptive list was denied.

A three-day bench trial was held in March 2020. At the close of evidence, the trial court dismissed Katherine and Raymond's claims for reimbursement and unjust enrichment. Shortly before trial, Katherine filed a motion for additional executrix compensation. This, too, was dismissed in open court. The objection to Katherine's final accounting was the only remaining contested issue. The matter was taken under advisement. Written reasons were then issued, and a final Judgment was ultimately

3

signed on May 21, 2020. It is from this Judgment that both the Succession of Willis P. Conques and Katherine and Raymond Freeman appeal.

On appeal, the Succession of Willis P. Conques asserts the following assignments of error:

1.  The District Court erred in denying the Peremptory Exception of No Right of Action.

2.  The District Court erred in refusing to homologate the final accounting as proposed by the independent administratrix when the final accounting was supported by uncontroverted testimony.

3.  The District Court erred in the assessment of executrix fees and other administrative fees to a particular legatee.

4.  The District Court erred in failing to award additional executrix fees to the independent administratrix.

On appeal, Katherine and Raymond Freeman assert the following assignments of error:

1.  The District Court erred by refusing to award reimbursement to the Freemans[] under *Louisiana Code of Civil Procedure Article 806* [sic] despite the uncontroverted testimony at trial.

2.  The District Court erred as a matter of law in concluding that a finding of fault or culpability was a necessary element to prove a claim of unjust enrichment.

3.  The District Court erred by concluding that a co-owner is not entitled to compensation for management of co-owned property under *Louisiana Civil Code Article 806*.

4.  The District Court erred in failing to [] award compensation for management of co-owned property under *Louisiana Civil Code Article 806* despite the uncontroverted testimony at trial.

5.  The District Court erred by divesting Raymond Freeman of funds received in compensation and reimbursement without proper judicial demand and without any supporting evidence or testimony.

4

## LAW AND ANALYSIS

### I.  The Succession's Assignments of Error

*First Assignment of Error*:

The Succession initially contends that the trial court erred in overruling its exception of no right of action.

The peremptory exception of no right of action tests whether a particular party has a right to bring the action. *Schoeffler v. Drake Hunting Club*, 05-499 (La.App. 3 Cir. 1/4/06), 919 So.2d 822.  Whether a party has a legal right to bring an action raises a question of law, which requires us to apply the de novo standard of review. *Id*.

The Succession asserts that only heirs or residuary legatees have a right to compel an accounting under La.Code Civ.P. art. 3332, or object to a final accounting under La.Code Civ.P. art. 3336.  Besides Katherine, the only residuary legatees of Willis's succession are Camille Conques Henry and Kathleen Conques Roche.  The other nine Conques siblings—because they are neither heirs nor residuary legatees of their father's succession—do not have a legal right to object to the final accounting.  This is the Succession's argument.  We disagree.

The Final Account and Disbursement filed in July 2017 by Katherine, as executrix, does much more than simply account to the Succession heirs and legatees for the administration of the estate.  For instance, it also accounts to all eleven of Katherine's co-owner siblings for the revenue, labor costs, management fees, and other expenses associated with the 10-acre trailer park.  Katherine managed the trailer park for more than four years.  Thus, Katherine was required to account to her eleven siblings for the "rents and revenue derived from th[is] property[.]" *Succession of Lambright v. Lambright*, 264 So.2d 796, 800 (La.App. 3 Cir. 1972).

5

The fact that Katherine's Final Account and Disbursement combines both accountings—the succession accounting and the accounting to her eleven co-owner siblings—into one is not surprising. After all, the petition accompanying the Final Account and Disbursement identifies Katherine's eleven siblings by name and requests that they "be duly notified of the filing of this account and to appear within ten (10) days and file opposition thereto, if any." Ultimately, all eleven siblings joined in filing an objection to the final account.

Additionally, as discussed earlier, the stipulated Judgment of December 19, 2014, reflects an agreement between Katherine and her eleven siblings with the following reservation: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that traversal of the Annual Accounting filed in these proceedings shall be deferred until further proceedings or at such time as a Final Accounting is rendered." The annual accounting for the trailer-park revenue and expenses is included within Katherine's Final Account and Disbursement. As expected—and in accordance with the reservation—Katherine's siblings did object to the proposed final account.

In sum, Katherine, on behalf of her father's succession, seeks to prevent her co-owner siblings from objecting to the proposed Final Account and Disbursement by arguing that they lack standing. We reject this argument. The trial court correctly overruled the Succession's peremptory exception of no right of action.

*Second Assignment of Error*:

The Succession next contends that the trial court erred in refusing to homologate the final accounting as proposed by the independent administratrix (Katherine) when the final accounting was supported by uncontroverted testimony.

At the outset, an appellate court may not set aside a trial court's factual findings in the absence of manifest error or unless it is clearly wrong. *Stobart v.*

6

*State, through Dep't of Transp. & Dev*., 617 So.2d 880 (La.1993).  When factual findings are based on evaluations of witness credibility, the manifest error-clearly wrong standard of review requires that the appellate court give great deference to the findings of the trier of facts because "only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).  When documents or other objective evidence contradict the witness's story, or the story is internally inconsistent or implausible on its face such that a reasonable fact finder would not credit the witness's story, an appellate court may find manifest error or clear wrongness even though the finding is purportedly based on a credibility determination. *Id.*

When expert testimony differs, it is the trier of fact who must determine the more credible evidence. *Hebert v. Sw. La. Elec. Membership Corp.*, 95-405 (La.App. 3 Cir. 12/27/95), 667 So.2d 1148, *writ denied*, 96-798 (La. 5/17/96), 673 So.2d 608; *Caravalho v. Dual Drilling Servs., Inc.*, 93-560 (La.App. 3 Cir. 2/2/94), 631 So.2d 725, *writ denied*, 94-878 (La. 5/13/94), 637 So.2d 1074.  The factfinder is entitled to assess the credibility and accept the testimony of an expert just like any other witness. *Hickman v. Exide, Inc.*, 28,495 (La.App. 2 Cir. 8/21/96), 679 So.2d 527. The effect and weight to be given to the expert testimony depends on the underlying facts and rests within the broad discretion of the trial judge. *Adams v. Commercial Nat'l Bank*, 27,360 (La.App. 2 Cir. 9/27/95), 661 So.2d 636.  And in deciding to accept the opinion of one expert and reject that of another, a trial court can virtually never be manifestly erroneous. *Hebert*, 667 So.2d 1148.

In this case, the trial court refused to homologate Katherine's Final Account and Disbursement because it was riddled with mistakes.  The Judgment on appeal states that "the Final Account of the Executrix cannot be homologated as it stands

7

because of the expenses and charges listed by the Executrix that are inappropriate or excessive and should not have been paid from the succession funds."

At trial, Katherine testified about her management of the three co-owned properties. She admitted that most of her efforts focused on the 10-acre trailer park. She explained that the trailer park was in poor condition, which required extensive repairs and attention. Her duties included receiving calls from trailer dealerships, handling disturbances, and collecting rents. She ensured that insurance premiums and property taxes were paid; that the grass was mowed; that sewerage was regulated; and that each trailer had access to water. In essence, Katherine testified that she was "on 24-hour call."

Katherine also explained that she used a single checking account for all three properties. Thus, trailer-park rentals were deposited into the checking account, and these funds were then used to pay the expenses for all three properties. According to Katherine, she and her husband owned fifty-four percent (54%) of the revenue from the trailer park, and her eleven siblings owned the remaining forty-six percent (46%).

Katherine's husband, Raymond, also testified at trial. He discussed the labor that was necessary to maintain the trailer park. For example, he pointed to the sewer system which was comprised of pumps, chlorination tanks, and oxidation ponds. He explained that he monitored the sewer system each day to ensure it remained operational. He also noted that he would periodically dig ditches on the property as additional maintenance for the sewer system. Raymond felt that his labor was reasonable and necessary for the preservation of all three properties.

The trial court was also presented with expert testimony. Stephanie Halphen, CPA, was engaged by Katherine and Raymond to testify in support of their individual claims for reimbursement and unjust enrichment, and in support of

8

Katherine's motion for additional executrix compensation. Based on her conversations with Katherine, and after reviewing the tax returns, bank account statements, descriptive list, and final accounting for the Succession, Ms. Halphen testified that all expenses paid by Katherine, as executrix, were reasonable and necessary for the maintenance and preservation of the trailer park, and that the extensive costs of operating the trailer park depleted most of its profits. She then opined that the labor and management fees paid by the Succession to Raymond were insufficient, claiming that Raymond and Katherine were due much more money for the work they performed.

The trial court was not persuaded by Ms. Halphen's testimony, finding that her opinions were not sufficiently supported by reliable information. It explained that Ms. Halphen's conclusions "paint the picture of a business so laden with expenses and costs that it could show no profits to speak of during 4½ years." The trial court further doubted Ms. Halphen's opinions because the 10 acres upon which the trailer park operated sold for much more than expected. Ms. Halphen attributed this unexpectedly high sale price to Katherine and Raymond's work efforts.

Chris Miller, CPA, also provided expert testimony at trial. Mr. Miller was engaged by Katherine's eleven siblings to address their objections to the Final Account and Disbursement. In its reasons for judgment, the trial court summarizes Mr. Miller's testimony as follows:

> In short, Mr. Miller's testimony was focused on the business of the Melanie Rose Trailer Park, not surprisingly since its operation and management after the death of Willis Conques is the point of this dispute. His conclusion was that excessive and unnecessary expenditures charged to the trailer park are the only explanation for it not making the profit it should have.
>
> The primary source of revenue for the trailer park business was rental fees for lots upon which residents parked their mobile homes. Mr. Miller examined the tax returns filed by Katherine Conques Freeman, as executrix. These returns show that rentals for the 4½ years

that Katherine Freeman operated and managed the business came to a total of $570,855.00. Those returns also show expenses of $568,660.00 resulting in a positive cash flow after expenses of only $2,195.00 for the entire 4½ years.

The expert opinion of Chris Miller addresses the issue presented by these figures as well as the price brought by the trailer park at sheriff's sale. It is his opinion that the financial performance or cash flow of the trailer park business cannot be accurate. He attributes this partly to inappropriate and excessive charges assessed against the business in the final account, and partly to the commingling of funds related to other estate properties into a single checking account.

He concludes that an accurate final accounting of the business is not possible to achieve in light of the fact that a proper segregation of expenses was neither maintained nor documented appropriately. He suggests that financial records should have been maintained separately since all of the co-owners had differing ownership interests in the business of the trailer park as compared to the two additional properties in the estate.

Mr. Miller then examined the checking account activity which confirmed that there was no attempt to distinguish between the trailer park expenses and those attributable to the other properties. He did conclude that many of the checks listed as business expenses on the tax filings were clearly not consistent with the operation of the business. He then proceeded to list examples such as excessive car and travel expenses; certain supplies and repairs; some taxes, excessive labor costs and others.

The conclusion reached by Mr. Miller is that the financial performance or cash flow of the trailer park as presented by Katherine Conques Freeman in the tax returns is "grossly inaccurate," and it is his opinion that personal expenses of the executrix were paid from estate funds; that commingling of funds related to the other properties are listed as expenses of the business; and, that the total expenditures for labor to her husband without supporting documentation renders the information provided by Mrs. Freeman unsuitable for achieving an accurate final accounting of the business.

Since, in Mr. Miller's view, it is not feasible to reconstruct an accurate accounting to determine the reasonable cash flows of the business because of the errors and lack of reliable documentation as well as the lack of segregation of the expenses, he is of the opinion that the only viable approach in light of the particular facts of this case is referred to as the "income capitalization" approach widely used in rental and commercial property valuations. This approach is used to estimate the value of property based on the income that it generates. Miller uses the known selling prices at sheriff's sale for the three estate properties. The trailer park, on about 11 acres, sold for $900,000.00

10

while the other adjacent properties sold for about $9000 per acre, or a total of about $300,000.00 for 33 acres.

Based on the income capitalization approach that he employed and considering that it sold for approximately $900,000.00 at sheriff's sale, Mr. Miller concludes that the trailer park business had an expected cash flow of between 7% and 10% of the sale price, or $283,500.00 to $405,000.00, during the 4½ years that it was operated by Katherine Freeman.

The trial court agreed with Mr. Miller and ultimately concluded that the reasonable expected profit of the trailer park was 8.5% of its purchase price (or $344,250). It then instructed the parties to revise the Final Account and Disbursement in accordance with its findings.

In the end, we cannot say that the trial court manifestly erred in rejecting the final account prepared by Katherine, as executrix. The trial court's findings, including its decision to accept the opinion of one expert (Mr. Miller) and reject the opinion of the other (Ms. Halphen), are reasonably supported by the record. This assignment of error is therefore without merit.

*Third Assignment of Error*:

The Succession contends that the trial court erred in assessing administration expenses to Raymond given his status as a particular legatee. Because this assignment questions the trial court's interpretation and application of law, we apply the de novo standard of review.

The Succession specifically asserts that the trial court improperly assessed Raymond, a particular legatee, with a portion of the executrix compensation and attorney fees. According to the Succession, only the general or universal legatees (Katherine, Kathleen Conques Roche, and Camille Conques Henry) are responsible for these administration expenses. We agree.

11

Payment of administration expenses is addressed in La.Civ.Code art. 1424, which states:

> Administration expenses are charged ratably to the fruits and products of property that is the object of the general or universal legacies and property that devolves by intestacy. When the fruits and products do not suffice to discharge the administration expenses, the remaining expenses are charged first to the property itself, next to the fruits and products of property that is the object of particular legacies, and then to the property itself.

As to the executrix compensation, the Judgment on appeal includes an attached Final Accounting and Disbursement. Page two of the attachment details the allocation of executrix compensation: Raymond was assessed $1,875. Thus, while the record reflects that Raymond was assessed with a portion of the executrix compensation, there is no evidence that he was assessed with any of the Succession's attorney fees.

In sum, the trial court erred in assessing any of the administration expenses to Raymond. We reverse that portion of the Judgment and remand the matter to the trial court to reassess the executrix compensation in accordance with La.Civ.Code art. 1424.

*Fourth Assignment of Error*:

In its fourth and final assignment of error, the Succession asserts that the trial court erred in failing to award Katherine additional executrix compensation. We review this assignment under the abuse of discretion standard of review, *Succession of Lasyone*, 395 So.2d 413 (La.App. 3 Cir. 1981), which is even more deferential to the factfinder than the manifest error-clearly erroneous standard.

Louisiana Code of Civil Procedure Article 3351 provides for the compensation of an executor, stating:

> In the absence of a provision in the testament or an agreement between the parties, the administrator or executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory

12

as compensation for his services in administering the succession. *The court may increase the compensation upon a proper showing that the usual commission is inadequate.* [Emphasis added.]

The trial court awarded Katherine, as executrix, the standard rate of two and one-half percent of the amount of the inventory. In its oral reasons, the trial court explained that Katherine did nothing "out of the ordinary" that would justify an increased amount.

Under the circumstances, we cannot say that the trial court abused its discretion in setting Katherine's executrix compensation at two and one-half percent. We affirm this award.

## II.     Katherine and Raymond's Assignments of Error

*First Assignment of Error*:

Katherine and Raymond initially contend that the trial court erred by refusing to award them reimbursement under La.Civ.Code art. 806 despite the uncontroverted testimony at trial. We review this assignment under the manifest error-clearly erroneous standard.

The Freemans assert that they incurred expenses for ordinary maintenance and repairs related to the three co-owned properties; that the undisputed evidence at trial shows that those expenses are reasonable and necessary to preserve the co-owned properties; and that all of the elements necessary to satisfy the claim for reimbursement under La.Civ.Code art. 806 were presented and uncontroverted.

Louisiana Civil Code Article 806 states as follows:

> A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.

> If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

13

The trial court ruled that Katherine and Raymond did not prove the essential elements of this claim by a preponderance of the evidence. Specifically, the trial court found that many of the claimed expenses were not necessary. More significantly, the trial court found that all of the expenses were paid with funds generated by the operation of the trailer park. Hence, the expenses were paid with co-owned funds. La.Civ.Code art. 798 ("Co-owners share the fruits and products of the thing held in indivision in proportion to their ownership.").

At trial, Katherine even acknowledged that co-owned funds were used to pay these expenses: she testified that she and Raymond owned fifty-four percent (54%) of the revenue from the trailer park, and that her eleven siblings owned the remaining forty-six percent (46%). As the trial court explained, there is no proof that Katherine or Raymond used their personal funds to pay any of this. The claim for reimbursement was therefore dismissed.

All in all, the trial court's findings are supported by the record. The trial court did not manifestly err in dismissing this claim.

*Second Assignment of Error*:

Katherine and Raymond next contend that the trial court erred as a matter of law in concluding that a finding of fault or culpability was a necessary element for their claim of unjust enrichment. Because this assignment seeks review of the trial court's interpretation and application of law, we apply the de novo standard of review.

Katherine and Raymond's claim for unjust enrichment specifically contends that they are owed compensation from Katherine's eleven co-owner siblings for the management of all three properties. According to the Freemans, the trial court's dismissal of this claim is contrary to the law and evidence because the court required a finding of fault against the defendant-siblings. We disagree.

14

Unjust enrichment is provided for in La.Civ.Code art. 2298, which states:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

There are five essential elements for a claim of unjust enrichment: (1) an enrichment of one party; (2) an impoverishment sustained by the other party; (3) a connection between the enrichment and resulting impoverishment; (4) the absence of justification or legal cause for the enrichment; and (5) the absence of any other remedy at law. *Crowded Cabin, L.L.C. v. TKLL Hebert, L.L.C.*, 13-208 (La.App. 3 Cir. 10/30/13), 126 So.3d 826.

In rejecting Katherine and Raymond's claim for unjust enrichment, the trial court explained that none of the five essential elements were proven by a preponderance of the evidence. Fault was not identified by the trial court as an essential element of this claim. The record reflects that the trial court correctly interpreted and applied the applicable law (La.Civ.Code art. 2298) to the evidence that was adduced.[1]

This assignment of error is without merit.

*Third Assignment of Error*:

Katherine and Raymond next assert that the trial court erred in concluding that a co-owner is not entitled to compensation for management of co-owned property under La.Civ.Code art. 806. Because this assignment questions the trial court's interpretation of La.Civ.Code art. 806, we apply the de novo standard of review.

---

[1] It is unclear whether the Freemans are also attempting to seek review of the sufficiency of the evidence. To the extent that they suggest that the essential elements of unjust enrichment were proven at trial, we note that the trial court's findings are reasonably supported by the record; there is no manifest error. If anything, the record reflects that the Freemans were enriched during Katherine's management of the three properties.

15

Louisiana Civil Code Article 806 states, in pertinent part, that "[a] co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or *necessary management expenses paid to a third person*, is entitled to reimbursement from the other co-owners in proportion to their shares." (Emphasis added).

The above emphasized language of La.Civ.Code art. 806 was interpreted by this court in *Aymond v. Aymond*, 99-1372 (La.App. 3 Cir. 3/1/00), 758 So.2d 886. There, we denied a co-owner's claim for management expenses because he did not employ a third person to manage the co-owned property; he was instead seeking reimbursement for his personal efforts in managing the property.

Similarly, Katherine and Raymond are not seeking reimbursement for management expenses paid to a third person; they are seeking compensation for Katherine's personal efforts in managing the three co-owned properties. As such, recovery of management fees under La.Civ.Code art. 806 is not permitted.

The trial court did not err in its interpretation of La.Civ.Code art. 806. This assignment of error is without merit.

*Fourth Assignment of Error*:

Katherine and Raymond next contend that the trial court erred in failing to award compensation for Katherine's management of co-owned property under La.Civ.Code art. 806 despite the uncontroverted testimony at trial.

As previously discussed, La.Civ.Code art. 806 is not the correct code article to seek this type of relief. The comments to Article 806 emphasize this point: "A co-owner is not allowed to receive anything for his own management of the thing that is held in indivision unless he is entitled to such a recovery under a management plan adopted by agreement of all the co-owners, by judgment, or under the law of unjust enrichment." La.Civ.Code art. 806 cmt. (c).

16

The trial court determined that there was no agreement or judgment providing for management fees. These findings are supported by the record. The recovery of management fees under the theory of unjust enrichment was discussed earlier.

This assignment of error is without merit.

*Fifth Assignment of Error*:

In their fifth and final assignment of error, Katherine and Raymond contend that the trial court erred by divesting Raymond of funds received in compensation and reimbursement without proper judicial demand and without any supporting evidence or testimony. As to whether proper judicial demand was made on Raymond, we apply the de novo standard of review. As to whether the record supports the trial court's ruling, we employ the manifest error-clearly erroneous standard of review.

During the 4.5 years that Katherine managed the co-owned properties, she paid Raymond—who owned an undivided $6/24^{th}$ interest in the trailer-park property—$89,200 in labor charges and $36,000 in management fees. As executrix, Katherine made these payments on behalf of the Succession using the revenue (lot rental fees) of the trailer park. The trial court concluded that Raymond was "not permitted to receive any compensation for labor or management performed on his co-owned property except by agreement or under the theory of unjust enrichment, neither of which exists here." The final account was then adjusted to reflect this ruling.

Turning now to the first part of this assignment of error: whether proper judicial demand was made on Raymond. In July 2017, Katherine filed a Petition for Homologation of Final Account, Compensation, Disbursement and Discharge of Independent Administrator, along with an accompanying Final Account and Disbursement. In response, ten of her siblings filed an Objection to Petition for

17

Homologation of Final Account, Compensation, Disbursement and Discharge of Independent Administrator.

Then, in January 2018, Katherine and Raymond filed in the succession proceeding a joint Petition for Intervention against Katherine's siblings. The eleven siblings, in turn, joined in filing a reconventional demand against Katherine and Raymond. The eleven siblings also joined in filing an Amended Objection to Final Accounting, specifically requesting that Raymond be ordered to reimburse them for the payments he received from the Succession during Katherine's administration. Raymond was properly served with this pleading.

By Order signed in December 2020, the objection to the final accounting was fixed for contradictory hearing. Raymond was served with notice with this Order. He was fully aware of the claims against him, and he defended himself and the money that was paid to him at the contradictory hearing. In sum, proper judicial demand was made on Raymond.

And now to the second part of this assignment: the sufficiency of the evidence. The evidence adduced at trial, including the expert testimony of Chris Miller, has already been discussed. So too have the trial court's credibility findings. In the end, the record before us reasonably supports the trial court's ruling.

For the above reasons, this assignment is without merit.

**DECREE**

The Judgment of May 21, 2020, is reversed only as to the executrix compensation that was assessed to Raymond Freeman; the matter is remanded to the trial court to reassess the executrix compensation in accordance with La.Civ.Code art. 1424. The Judgment is affirmed in all other respects. All costs of this appeal are assessed equally between the Succession of Willis P. Conques and Katherine and Raymond Freeman, individually.

18

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules, Courts of Appeal, Rule 2-16.3